In re Theodore R. PRICE and
Ollie P. Price, Debtors.

Theodore R. PRICE and Ollie P.
Price, Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 93–3133.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 1994.

Decided Dec. 14, 1994.

Gary R. Allen, Gary D. Gray (argued), John A. Dudeck, Jr., Dept. of Justice, Tax Div., Appellate Section, Washington, DC, Joel R. Nathan, Asst. U.S. Atty., Civ. Div., Appellate Section, Chicago, IL, Karen A. Smith, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for appellant.

Cary R. Rosenthal, Kevin D. Sprow, Robert E. McKenzie (argued), McKenzie & McKenzie, Chicago, IL, for appellees.

Before GODBOLD,* WOOD, Jr., and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Within the context of a Chapter 13 bankruptcy proceeding, Theodore Price and his wife, Ollie Price, brought an action against the United States seeking attorneys' fees and costs for the Internal Revenue Service's post-petition violation of an automatic stay.

* The Honorable John C. Godbold, Circuit Judge of the Eleventh Circuit, is sitting by designation.

The bankruptcy court held that sovereign immunity was waived by the United States under Section 106 of the Bankruptcy Code, and that the debtors were entitled to damages for the stay violation. The district court affirmed and remanded the case for entry of the amount of the award. The bankruptcy court awarded $11,477.88 in fees and costs, and the district court affirmed. The government appeals arguing that the government did not waive sovereign immunity because the applicable logical relationship test was not met. Because we conclude the government did waive sovereign immunity under § 106(a), we affirm.

## I. FACTS

The facts in this case are not in dispute. On January 17, 1989, Theodore and Ollie Price [debtors] filed a joint Chapter 13 petition for relief. The Internal Revenue Service [IRS] received proper notification of the bankruptcy filing. A repayment plan was confirmed in February 1989. Under the plan the debtors were required to pay in full their 1986, 1987, and 1988 income taxes. The debtors have paid those taxes according to their plan.

On April 17, 1989, the IRS sent a notice of intent to levy in violation of the automatic stay. The notice stated that unless the IRS received their 1988 income tax liability of $3,188.65 within ten days, enforcement proceedings, which may include filing tax liens and seizing debtors' property, would be instituted. The debtors contacted their bankruptcy counsel, who called the IRS office that issued the notice the next day. After several days and several unsuccessful attempts by debtors' counsel to contact an IRS official concerning this matter, the debtors filed an emergency motion to enjoin the IRS from taking further collection actions and a petition to show cause.

The government conceded in their response that such a notice to levy was a violation of the automatic stay under 11 U.S.C § 362, but contested the emergency motion and petition. The notice was a computer-generated error that could have been suspended with human intervention. On May 9, 1989, subsequent to the notice and response, the IRS filed its timely proof of claim concerning their tax liability interest.

On August 23, 1989, Bankruptcy Judge John H. Squires of the United States Bankruptcy Court for the Northern District of Illinois, held that the IRS had willfully violated the automatic stay under § 362(a)(1) and (6), and thus the Prices were entitled to reasonable attorneys' fees and costs under § 362(h). Bankruptcy Judge Squires also determined the IRS had waived its sovereign immunity under 11 U.S.C. § 106(a), (b), and (c).

The government appealed to the district court. The government's principal defense was the bankruptcy court erred in finding that the United States had waived its sovereign immunity from monetary relief under § 362(h). Judge Rovner affirmed the bankruptcy court's order and ruled the United States had waived its sovereign immunity under § 106(a), (b), and (c). The case was remanded back to Bankruptcy Judge Squires for entry of the amount of attorneys' fees and costs.

 In the interim, on February 25, 1992, the Supreme Court decided *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). At issue was whether § 106 of the Bankruptcy Code was an unequivocal waiver of the government's sovereign immunity from a bankruptcy trustee's claims for monetary relief. *Id.* at ——— ———, 112 S.Ct. at 1011–13. Justice Scalia, writing for the Court, held that § 106(c) did not waive the United States' sovereign immunity with regard to monetary relief because it failed to unambiguously establish that the waiver extended to these types of monetary claims. *Id.* at ———, 112 S.Ct. at 1015. The Court, however, did find that subsections (a) and (b) of § 106 met this " 'unequivocal expression' requirement with respect to monetary liability." *Id.* Subsections 106(a) and (b) plainly waive sovereign immunity in regards to monetary relief in two settings: compulsory counterclaims to governmental claims, 11 U.S.C. § 106(a); and permissive counterclaims to governmental claims capped by a setoff limitation, 11 U.S.C. § 106(b). *Id.*

Bankruptcy Judge Squires found that the *Nordic Village* decision effectively overruled Judge Rovner's holding with regard to § 106(c), but buttressed the validity of her decision concerning subsections § 106(a) and (b). Therefore Bankruptcy Judge Squires awarded damages accordingly; $10,963.75 was to be paid in attorneys' fees and $514.13 in reimbursement for expenses. The government again appealed to the district court, which was heard by Judge Holderman.

The district court affirmed the award of damages and dismissed the government's sovereign immunity arguments because the issue had been previously ruled on. The government then appealed to this court. We affirm.

## II. ANALYSIS

Section 362 of the Bankruptcy Code provides:

(a) Except as provided in subsection (b) of this section, a petition filed under 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

. . . .

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362 (1993).

■■■ Pursuant to § 362(a)(1) and (6) of the Bankruptcy Code, when a debtor files a petition in bankruptcy, creditors are barred from attempting to collect debts that arose prior to bankruptcy. *See Price v. Rochford,* 947 F.2d 829, 831 (7th Cir.1991). If such collection attempts are made, a violation will result and entitle the debtor to any actual damages—attorneys' fees and costs—under § 362(h). There is no dispute in this case that the IRS did in fact violate § 362(a)(1) and (6). The IRS has conceded that the notice, albeit generated by a computer error, constituted a technical violation of the stay. The violation is also considered willful because the government was aware of the pending bankruptcy proceeding and, despite the several pleas to halt further collection actions, the government declined to intervene. A "willful violation" does not require a specific intent to violate the automatic stay. Therefore, effectively conceding the violation, the government argues that it is not liable to the Prices because of sovereign immunity.

■■■ The doctrine of sovereign immunity prohibits suits against the United States except in specific instances where the government has consented to be sued. *FDIC v. Meyer,* —— U.S. ——, ——, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994); *United States v. Nordic Village, Inc.,* 503 U.S. 30, —— – ——, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992); *Loeffler v. Frank,* 486 U.S. 549, 554, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1988). The terms of the consent must be construed in favor of the sovereign and not enlarged beyond what the language requires. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983). Because sovereign immunity is jurisdictional in nature, the government's waiver of sovereign immunity is a jurisdictional prerequisite to a bankruptcy court's order. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941) (stating the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit"); *see also United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983) (stating that the "United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").

In order to assert a claim against a "governmental unit,"[1] a party must satisfy the requirements of § 106 of the Bankruptcy Code. Section 106 provides a limited waiver of sovereign immunity in bankruptcy cases, and is the only source for a waiver of immunity. Section 106 contains three subparts where the government is deemed to have waived sovereign immunity. Section 106 provides:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106 (1993).[2]

 At issue here is whether the government waived its sovereign immunity under § 106(a).[3] This provision unequivocally expresses the government's consent to be sued for money damages whenever a compulsory counterclaim is brought in response to a claim filed by the government. *Nordic Village,* 503 U.S. at ——, 112 S.Ct. at 1015. Therefore, § 106(a) is only applicable if the debtor's stay violation claim is considered a compulsory counterclaim to the government's tax liability claim. In sum, to pursue monetary relief under § 106 from a governmental unit if the governmental unit has a claim against the estate, the debtors must first establish that its claim is property of the estate and the two claims arise out of the same transaction or occurrence. *Taborski v. United States,* 141 B.R. 959, 964 (N.D.Ill. 1992) (citing *United States v. McPeck,* 910 F.2d 509, 512 (8th Cir.1990)); *see also In re Pinkstaff,* 974 F.2d 113 (9th Cir.1992).

 The first two requirements of the test are met. First, the IRS filed a claim of proof in the bankruptcy proceeding concerning Prices' tax liability for 1986, 1987, and 1988. Second, Prices' claim for attorneys' fees and costs is considered property of the estate. *In re Price,* 130 B.R. 259, 268–69 (N.D.Ill.1991) (holding that a "post-confirmation claim for attorneys' fees can qualify as property of the estate for § 106(a) purposes"); *see also McPeck,* 910 F.2d at 513 (holding the claim for attorneys' fees under § 362(h) is property of the estate). The last requirement compels a finding that both claims arise from the same transaction or occurrence. In determining whether the claim is compulsory—from the "same transaction or occurrence"—the "logical relationship" test under Rule 13(a) is applied.

---

1. A "governmental unit" is defined as the United States, a State, a foreign or local government, or an instrumentality thereof. 11 U.S.C. § 101 (1993).

2. Legislation was recently passed concerning amendments to § 106 of the Bankruptcy Code under the Bankruptcy Reform Act of 1994. The new legislation does not alter the decision of this court concerning § 106(a). The new Act does not change the substance of § 106(a), but recodifies it as § 106(b). § 106(b) provides:

A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 113, 108 Stat. 4106, 4117–18 (1994).

3. The bankruptcy court and district court found that the government had waived its immunity under § 106(b) as well. Counsel for the government argued that this was no longer an issue because § 106(b) only allowed claims to be brought if there was an amount to set off. Because the tax liability by the debtors as of this date had been paid, they contend there is no money to offset. Counsel for the debtors argued that there was money to offset when the claim was originally brought and the fact the government delayed the ultimate resolution should not be used to preclude a finding under § 106(b). In view of our opinion, we need not reach this issue.

The "same transaction" requirement was borrowed from Rule 13(a) of the Federal Rules of Civil Procedure. *See Burlington N. R.R. v. Strong,* 907 F.2d 707, 711 (7th Cir. 1990). The standard used in determining whether two claims arise out of the "same transaction" for purposes of Rule 13(a) is the "logical relationship" test. *Id.*

> Courts generally have agreed that the words "transaction or occurrence" should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a).... As a word of flexible meaning, "transaction" may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.

*Warshawsky & Co. v. Arcata Nat'l Corp.,* 552 F.2d 1257, 1261 (7th Cir.1977).

■ The purpose behind the rule is judicial economy; to avoid a multiplicity of actions by resolving in a single lawsuit all disputes that ensue from a common factual background. 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1409, at 46–47 (2d ed. 1990). The inquiry is not intended to be "a wooden application of the common transaction label," but rather a careful examination of the factual allegations underlying each claim in determining whether the test is met. *Burlington,* 907 F.2d at 711. There is no formalistic test to determine whether the claims are logically related. A court should consider: "the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Id.* at 711–12.[4]

The government argues that the district court erred in concluding the logical relationship test was met because the court did not examine the totality of the circumstances. The district court found that the notice of intent to levy had its genesis in the government's attempt to collect the debtors' unpaid taxes. *In re Price,* 130 B.R. 259, 270 (N.D.Ill.1991). The government contends that a debtor's counterclaim is not compulsory merely because it arises out of the creditor's prior efforts to collect the debt sued upon.

■ Applying the logical relationship test, we find the relationship between the Prices' claim and the IRS' notice of intent to levy is derived from the same transaction or occurrence. The history behind Rule 13(a) suggests a flexible approach over a formalistic one when assessing the totality of the circumstances. *See Burlington N. R.R. v. Strong,* 907 F.2d 707, 711 (7th Cir.1990); *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n,* 804 F.2d 390, 397 (7th Cir.1986); *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1291 (7th Cir.1980). Therefore, when the events leading up to this appeal are considered, it is hard to understand how the claims could not be perspicuously related.

The pertinent inquiry is whether the claim *arises out of* the same transaction or occurrence and not whether the claims are *from* the same transaction or occurrence. Both claims here arise out of the debtors' tax liability. In this case, the IRS' claim arises from the Prices' failure to pay taxes owed for years 1986, 1987, and 1988. The debtors' claim arises pursuant to the attempt by the IRS to collect those taxes. The basis of both claims revolve around the same aggregate core of facts—the debtors' unpaid taxes. Counsel for the government conceded at trial that there would have been no stay violation had there been no tax liability.

4. The government relies on *Burlington N. R.R. v. Strong,* 907 F.2d 707 (7th Cir.1990), and *In re Rebel Coal,* 944 F.2d 320 (6th Cir.1991), in arguing that damages should not be awarded. We find that the government's reliance on these cases is misplaced. The facts, law, and legal basis for recovery is different from the case at bar in each respect. *Burlington* was not a bankruptcy case, but rather a railroad's claim against an injured employee for the recoupment of benefits previously paid on account of the employee's injury. *Burlington,* 907 F.2d at 712. The court held the railroad's claim was not a compulsory claim that had to be raised with the employee's FELA claim against the railroad. *Id. In re Rebel Coal* is a bankruptcy case, but it does not deal with the violation of an automatic stay. *Rebel Coal* involves a preference claim on funds collected before bankruptcy was filed. *In re Rebel Coal,* 944 F.2d at 321. The only circuit case on point is *In re Pinkstaff,* 974 F.2d 113 (9th Cir. 1992), and we agree with the Ninth Circuit's reasoning.

In sum, the notice of intent to levy that the IRS sent the Prices, which gave rise to the stay violation and subsequent attorneys' fees, arose from the government's actions to collect on the unpaid taxes. Therefore, if the notice had not been sent there would have been no need to expend the attorneys' fees and costs in defending this matter. The totality of these circumstances demonstrates a substantially and logically related nexus between the claims. Because the logical relationship test is met, the government is deemed to have waived their sovereign immunity under § 106(a) of the Bankruptcy Code.

 The government next argues that even if the court finds the nexus requirement under § 106(a) satisfied, § 7430 of the Internal Revenue Code governs the award of fees in this case. They contend that § 362(h) of the Bankruptcy Code does not create a substantive right to attorneys' fees against the United States. The IRS' claim is that nothing in § 362(h) itself nor in the legislative history of the section creates an enforceable right against the government. Therefore the government argues the award of fees under § 106(a) must also meet the transactional requirement under § 7430.

This argument need not be addressed by this court. While this matter was pending, the Bankruptcy Reform Act of 1994 [Act] was enacted. In the Act, there are retroactive amendments to the current § 106. Section 113—SOVEREIGN IMMUNITY—of the new Act, amends the way in which an order or judgment for costs shall be awarded. Under the new provision, any fees or costs awarded under § 106(a) "shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28." Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 113, 108 Stat. 4106, 4117–18 (1994).[5]

Section 2412(d)(2)(A) provides that attorneys' fees "shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding in-

volved, justifies a higher award." 28 U.S.C. § 2412(d)(2)(A) (1994). Because the amendment is subsequent to the award of fees, Bankruptcy Judge Squires could not have considered limiting the award to the $75 per hour cap or determining whether there were any special factors involved. Therefore, the case is to be remanded on this issue and fees are to be awarded consistent with 28 U.S.C. § 2412(d)(2)(A) under the new guidelines.

### III. CONCLUSION

We AFFIRM the order of the district court, and REMAND the amount of fees issue to the bankruptcy court to be decided in a manner consistent with the new provisions under the Bankruptcy Reform Act of 1994.

---

5. The recent legislation affects this case because the bill contains a retroactive provision that affects all cases pending on the date the bill was signed into law. Pub.L. No. 103–394, § 702(a), (b)(2)(B) (1994).