UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

**Filed 10/7/96**

| | |
|---|---|
| PASCALL GROUP, INC., ARW EXPLORATION CORPORATION and SPIRO ARMENIS, | |
| Plaintiffs-Appellants, | No. 95-6413 (D.C. Nos. CIV-95-771-W & CIV-95-769-W) (W.D. Okla.) |
| v. | |
| STEEL RECLAMATION RESOURCES, INC., | |
| Defendant-Appellee. | |

ORDER AND JUDGMENT[*]

Before ANDERSON, LOGAN, and MURPHY, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

[*]      This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument. See Fed. R. App. P. 34 (f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiffs-appellants Pascall Group, Inc. (PGI), ARW Exploration Corporation (ARW) and Spiro Armenis appeal from the district court's order affirming the bankruptcy court's judgment against them in this adversary proceeding. We affirm.

I.

In 1991, Peter Choy, John Chin and appellant Spiro Armenis formed defendant-appellee Steel Reclamation Resources, Inc. (SRR), a corporation whose principal purpose was the purchase of scrap steel from oil and gas projects for sale in the Far East. Armenis was the president of SRR; he was also president of appellants PGI and ARW. Armenis operated the day-to-day activities of all three corporations.

On September 25, 1991, SRR entered into a contract with intermediary HK Tung Pang Trading Company (Tung Pang) to sell 50,000 metric tons of scrap steel to Anshan Iron and Steel Complex in the People's Republic of China (Anshan). The steel was to be delivered in two 25,000 metric ton shipments.

On November 16, 1991, Tung Pang obtained a letter of credit from the Bank of East Asia in favor of SRR in the amount of $3,425,000, plus or minus ten percent. Deutsche Bank of New York, the advising bank, was authorized to make

disbursements to SRR under the letter of credit upon SRR's presentation of documentation to show that SRR had complied with its obligations under the contract. The letter of credit contained a clause (commonly known in the business of international trade as a "red clause") allowing SRR to draw down $1,000,000 on the letter of credit, prior to shipment of the steel, upon presentation of a UCC-1 form granting Bank of East Asia a security interest in an oil field.

On November 25, 1991, SRR presented a UCC-1 form to Deutsche Bank. Deutsche Bank allowed Armenis to draw down $1,000,000 under the red clause. This money, less fees, was deposited to SRR's account in an Oklahoma City bank. The amount of the deposit was $992,045.37. At Armenis's direction, the bank then transferred $600,000 to PGI's account and $392,048.99 to ARW's account. This left SRR's account with a negative balance of $3.62. The bankruptcy court found that the remaining directors of SRR were unaware of, and did not approve, either the transfer of the red clause money to SRR or these subsequent transfers to others.

Upon presentation of certain documents to Deutsche Bank, the remaining balance of the letter of credit was funded on June 4, 1992. The bankruptcy court found that the documentation introduced into evidence at trial, which Armenis allegedly presented to Deutsche Bank, was falsified in order to improperly draw down the balance of the letter of credit.

At Armenis's instructions, Deutsche Bank transferred the remaining balance of the letter of credit to various organizations and individuals. These transfers included, among others, a transfer of $925,000 to National Bank of Greece, Athens, Greece, for credit to Seacoral Maritime Services (Seacoral), allegedly for shipping the scrap steel to China on the ship Stavento, and a transfer of $626,211.56 to SRR's account. On the following day, $400,000 was in turn transferred from SRR's account to PGI, and $270,000 to ARW, allegedly to reimburse them for steel purchases made on SRR's behalf.

On June 19, 1992, the assignment of proceeds to Seacoral was canceled and the $925,000 was refunded to SRR. Three days later, $675,000 was transferred from SRR's account to PGI's account.

SRR filed bankruptcy proceedings on September 17, 1992. The trustee thereafter filed this adversarial proceeding on behalf of SRR's estate, seeking to avoid all of the above-mentioned transfers, and others not mentioned here, as fraudulent, and to hold Armenis personally liable for each of them.

Seacoral filed a proof of claim in SRR's bankruptcy, seeking payment of $298,113.01 or the expenses which it allegedly incurred in providing the Stavento to be chartered under a contract between SRR and Minority Development Panama, Ltd. (M.P.). The contract provided that M.P. would charter a ship from Seacoral for purposes of shipping the steel to China, and that the relevant charter fees

-4-

would be paid by SRR. Seacoral's proof of claim alleges that both SRR and M.P. failed to perform under the terms of the chartering agreement.

Tung Pang also filed a proof of claim in SRR's bankruptcy, alleging that "the debtor has got USD 3,751,060.00 from bank by using false documents. The debtor as the steel seller, has never delivered any steel to the creditor." Appellee's Supp. App. at 15. Tung Pang's proof of claim, including interest and penalties, totalled $5,229,860.00.

The bankruptcy court found numerous indications of fraud in the record. It concluded that all of the monies were drawn down and disbursed through accounts which were in Armenis's sole control. The bankruptcy court discounted Armenis's assertions that both Choy and Chin had approved of the transfers. It concluded not only that the transfers were not authorized, but also that SRR was not entitled to draw down the letter of credit because it had not complied with its obligations under the contract. The court found no proof that a shipment of steel actually was made.

The bankruptcy court ordered that, inter alia, the November 25, 1991 transfer of $600,000 to PGI and $392,048.99 to ARW, the June 5, 1992 transfer of $400,000 to PGI and of $270,000 to ARW, the June 22, 1992 transfer of $675,000 to PGI, and a June 25, 1992 transfer of $5,000 to PGI be avoided. It further ordered that these avoided transfers be recovered from the transferees

pursuant to 11 U.S.C. § 550(a)(1) and (2). The court also held Armenis personally liable for the transfers, reasoning that he had breached his fiduciary duty to SRR. It entered judgment against PGI in the amount of $1,675,000, against ARW for $662,048.99, and against Armenis for $3,751,000. The district court affirmed the bankruptcy court's judgment, and appellants appealed to this court.

## II.

"In reviewing a district court's decision affirming the decision of a bankruptcy court, this court applies the same standards of review which governed the district court. The bankruptcy court's findings of facts will be rejected only if clearly erroneous. Its conclusions of law, however, are reviewed <u>de novo</u>." <u>Broitman v. Kirkland (In re Kirkland)</u>, 86 F.3d 172, 174 (10th Cir. 1996)(further citations omitted).

## III.

Appellants first contend that the bankruptcy court applied the wrong standard of proof in determining whether SRR made the challenged transfers with actual intent to defraud its creditors. <u>See</u> 11 U.S.C. § 548(a)(1). The court, citing <u>Grogan v. Garner</u>, 498 U.S. 279 (1991), required the trustee to prove fraudulent intent by a "preponderance of the evidence." Appellants contend that the bankruptcy court should have employed the more rigorous standard of "clear and

convincing evidence."[1] We do not reach this issue, however, because appellants are procedurally barred from presenting it to this court.

Appellants did not raise the burden of proof issue in their opening appellate brief in the district court. The district court determined that appellants had waived the issue. We agree. See, e.g., United States v. Price, 176 B.R. 807, 809 (N.D. Ill. 1993), aff'd, 42 F.3d 1068 (7th Cir. 1994); cf. Bankruptcy Rule 8010(a)(1)(C)(party appealing to district court must identify issues in opening brief). Since this issue was not properly presented to the district court, we also will not address it.[2] See Walker v. Mather (In re Walker), 959 F.2d 894, 896

---

[1] Grogan determined that the correct standard of proof for nondischargeability for "actual fraud" under 11 U.S.C. § 523 is preponderance of the evidence. The bankruptcy courts appear to be divided on the question of whether Grogan also applies to "actual fraud" under § 548(a)(1). Cases applying Grogan, and the preponderance standard to § 548(a)(1) determinations of actual fraud include Morris v. Midway S. Baptist Church (In re Newman), 183 B.R. 239, 246 (Bankr. D. Kan. 1995); Thompson v. Jonovich (In re Food & Fibre Protection, Ltd.), 168 B.R. 408, 418 (Bankr. D. Ariz. 1994); Mancuso v. T. Ishida USA, Inc. (In re Sullivan), 161 B.R. 776, 779-80 (Bankr. N.D. Tex. 1993); Gutierrez v. Lomas Mortgage (In re Gutierrez), 160 B.R. 788, 791 (Bankr. W.D. Tex. 1993); and Consolidated Partners Inv. Co. v. Lake, 152 B.R. 485, 488 (Bankr. N.D. Ohio, 1993). Post-Grogan cases applying the "clear and convincing evidence" standard include Bumgardner v. Ross (In re Ste. Jan-Marie, Inc.), 151 B.R. 984, 987 (Bankr. S.D. Fla. 1993)(post-Grogan case applying clear and convincing evidence standard; does not mention Grogan); and Glinka v. Bank of Vermont (In re Kelton Motors, Inc.), 130 B.R. 170, 178-79 (Bankr. D. Vt. 1991)(mentions Grogan in passing, but does not apply it).

[2] Appellants raised the issue in their reply brief before the district court. Although the district court found the issue waived, it did remark that it had conducted a de novo review of the record and was satisfied that there was clear

(continued...)

(10th Cir. 1992); Cf. Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 136 n.2 (1st Cir. 1992)(court of appeals would not consider issue of burden of proof not raised before district court or bankruptcy court).

IV.

Appellants next argue that the bankruptcy court's finding that the transfers were voidable under § 548 is unsupported by the evidence. They contend that the district court erred in finding that SRR had unpaid creditors which were defrauded by the transfers, see § 548(a)(1), and that it was insolvent at the time of the transfers, see § 548(a)(2).[3] Appellants' assertion, simply stated, is that SRR performed its obligations under the contract and was therefore entitled to draw down the letter of credit; thus, it incurred no unpaid obligation resulting in insolvency.

---

[2](...continued)
and convincing evidence of actual intent to defraud. However, the district court took no position concerning which of the two standards should apply. We do not consider its passing remark sufficient to preserve this issue for our review.

[3]    Appellants contend that the bankruptcy court's finding that "it was uncontested that the debtor was insolvent at the time of the transfers," see Appellants' App. at A42, is incorrect and constitutes reversible error. Appellants have not provided us with a transcript, so it is not possible to determine to what extent they contested the insolvency issue at trial. However, even if the district court erroneously treated a contested issue as uncontested, this does not require reversal. This court can affirm on any basis presented in the record. See Swoboda v. Dubach, 992 F.2d 286, 291 (10th Cir. 1993). We affirm for the reasons stated elsewhere in this order and judgment.

The bankruptcy court's determinations regarding insolvency are subject to the clearly erroneous standard of review. See Gillman v. Scientific Research Prods., Inc. (In re Mama D'Angelo, Inc.), 55 F.3d 552, 555 (10th Cir. 1995). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). "It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." Gillman, 55 F.3d at 555 (further citation omitted).

On this record, however, we cannot resolve the issue of whether the bankruptcy court's conclusion regarding insolvency was clearly erroneous, and thus we must accept it. In reaching its conclusions, the court relied considerably on the testimony of Spiro Armenis, which it found not credible, and that of Peter Choy, which it chose to believe. Other than brief snippets contained in appellee's appendix, we do not have a transcript of their testimony, which would allow us to complete our review. Therefore, we must accept the bankruptcy court's findings

on the insolvency issue. See Rubner & Kutner v. Trustee (In re Lederman Enters., Inc.), 997 F.2d 1321, 1323 (10th Cir. 1993).[4]

V.

Finally, appellants argue that the judgment against Armenis must be reversed, because the trustee failed to prove that he breached his fiduciary duty to SRR. Before the district court, appellants argued that Armenis could not be held liable for the judgment because he was not a transferee. Here, however, they merely urge that the judgment cannot stand because it is based on the bankruptcy court's finding of fraud. That finding has survived appellants' challenges, as noted above. Therefore, their argument concerning Armenis's personal liability must fail as well.

---

[4]    Appellants also assert that Dennis Maley, SRR's expert accounting witness, did not apply proper accounting principles in reaching his conclusion that SRR was insolvent at the time of the transfers. Appellants' brief contains neither reference to pertinent legal authority concerning insolvency, nor citations to conflicting expert testimony, nor even a citation to an accounting treatise, which would substantiate the alleged errors in Mr. Maley's methodology. Appellants do present a recitation in their brief of some "fundamental principles of accounting," which they apparently regard as self-evident, but which are of little value to this court in reviewing the bankruptcy court's decision. In their reply brief, appellants boldly assert that since the trustee has the burden of proving insolvency, they need not prove anything. Appellants forget that although the trustee had the burden of proving insolvency, they have the burden in this court of showing that the bankruptcy court was wrong. This, they have failed to do.

## VI.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge