**In re Arland LAYTON, Rosemary K. Layton, Debtors.**

**In re Richard DEHART, Linda Dehart, Debtors.**

**In re James E. HARTWELL, Sr., Kathleen L. Hartwell, Debtors.**

**Bankruptcy Nos. 96–64501, 96–64488, 97–62455.**

United States Bankruptcy Court, N.D. New York.

April 3, 1998.

---

**510**

Peter A. Orville, Vestal, NY, for Debtors/Movants.

Deily, Dautel & Mooney, LLP, Linda T. Taverni, of counsel, Albany, NY, for Tioga County Treasurer.

Mark Swimelar, Syracuse, NY, Chapter 13 Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before this Court is a motion filed on August 26, 1997, by debtors in three separate cases: *In re James and Kathleen Hartwell,* Case No. 96–62455 ("Hartwell case"), *In re Richard and Linda Dehart,* Case No. 96–64488 ("Dehart case"), *In re Arland and Rosemary Layton,* Case No. 96–64501 ("Layton case") (collectively, the "Debtors") seeking an order: (1) finding the Tioga County, New York Treasurer's office ("Tioga") in contempt of court for willful

violations of the automatic stay ("Stay"), (2) awarding $250 in attorneys' fees,[1] (3) awarding $2,000 in punitive damages, (4) requiring Tioga to discharge all of the Debtors' pre and post-petition taxes, (5) providing for the Debtors to pay all post-petition county taxes to Tioga outside of their chapter 13 plans, and (6) requiring Tioga to drop all interest and penalty charges added to their 1997 county taxes.[2] The motion was originally scheduled to be heard on September 15, 1997, and was adjourned twice thereafter on the consent of the parties.

The Court heard oral argument on the motion on November 10, 1997, in Binghamton, New York. The matter was adjourned until December 8, 1997, in order for the parties to file memoranda of law. The Court heard additional oral argument on the motion on December 8, 1997, and the matter was submitted for decision after oral argument.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A).

### FACTS

Each of the Debtors filed a voluntary petition ("Petition") seeking relief under chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). On September 27, 1996, the debtors in the Dehart and Layton case each filed a Petition and the debtors in the Hartwell case filed a Petition on April 22, 1997. The Debtors each indicated in Schedule "A" of their Petition that they are the owners of real property and it is undisputed that their respective real property is located in Tioga County. Each of the Debtors listed Tioga as a creditor in Schedule "E" of their Petition.[3] It is undisputed that at the time

---

1. Post-argument, each of the Debtors requested an additional $250 due to an increase in time expended in prosecuting the action. *See* Layton's Memorandum of Law ("Layton's Memo"), filed on December 4, 1997; Dehart's Memorandum of Law ("Dehart's Memo"), filed on December 4, 1997; Hartwell's Memorandum of Law ("Hartwell's Memo"), filed on December 4, 1997.

2. After the argument on November 10, 1997, the Debtors in the Hartwell case amended their requests for relief and now only seek relief for Nos. 1–4. *See* Hartwell's Memo.

3. In the Dehart case, Tioga was listed as holding a claim for 1995–96 school taxes and 1996 county taxes. In the Layton case, Tioga was listed as holding a claim for property taxes. In the Hart-

the debtors in the Dehart and Layton cases each filed their Petition, they owed the 1996–97 school taxes ("School Tax") as a pre-petition debt to the respective school districts in which their real property is located.[4] In the Dehart and Layton cases, Tioga filed proofs of claim on November 8, 1996, listing a secured claim for taxes incurred January 1996. In the Hartwell case, Tioga filed a proof of claim on June 26, 1997, for debt incurred on January 1 for the years 1993–1997. Each of the Debtors obtained confirmation of their chapter 13 plan ("Plan"). This Court signed a Confirmation Order dated December 17, 1996, for the debtors in the Dehart and Layton cases. In the Hartwell case, a Confirmation Order was entered by this Court on July 15, 1997.

It is undisputed that pursuant to New York Real Property Tax Law § 1330 ("NYRPTL"), Tioga paid the school districts the amount of unpaid School Taxes and re-levied these taxes on the real property of the debtors in the Dehart and Layton cases. The School Taxes were included on the tax bills of these debtors for their county taxes ("County Taxes") due and payable in January 1997.[5] The debtors in the Layton and Dehart cases attempted to pay their 1997 post-petition County Taxes in January 1997. See ¶ 6 of Layton's Memo and Dehart's Memo. Tioga would not accept their payment on the ground that it was a partial payment because it did not include the relevied 1996–97 School Taxes. See id.

Tioga thereafter sent a letter to each of the Debtors dated July 7, 1997, ("July letter") which notifies the Debtors that they owed real property taxes for 1996. See Exhibit "F" of Dehart's Memo; Exhibit "C" of Hartwell's Memo.[6] The July letter says that if the respective taxes are not paid by August 1, 1997, the Debtors will be charged $150 in legal fees. See id. The July letter further provides that if these taxes are not paid by

December 10, 1997, then Tioga "will file a Notice and Petition of Foreclosure" which will also be published in the newspapers. Id. The July letter states "we urge you to pay this tax as soon as possible." Id.

Tioga sent a letter to each of the Debtors dated September 1, 1997, ("September letter") which notifies the Debtors of delinquent real property taxes for 1997 and advises that if the taxes are not paid by October 2, 1997, then it will publish a notice in the newspaper. See Exhibit "G" of Dehart's Memo; Exhibit "D" of Hartwell's Memo; Exhibit "F" of Layton's Memo. Additionally, the September letter provides that if the taxes are unpaid as of November 2, 1997, Tioga will file a List of Delinquent Taxes in the office of the County Clerk as required by law. See id. The September letter says "we urge you to pay the outstanding taxes as soon as possible" and failure to pay these taxes will result in the eventual loss of the Debtors' property. Id.

### ARGUMENTS

In the Dehart and Layton cases, the debtors contend that Tioga violated the Stay by relevying their pre-petition School Taxes as part of their post-petition County Taxes. These debtors argue that the relevied School Taxes remain a pre-petition obligation because Tioga cannot "transform" a pre-petition debt into a post-petition debt under the Code simply by making a gratuitous payment to the respective school districts. Also, the debtors in the Dehart and Layton cases assert that by refusing to accept the partial payment of their post-petition County Taxes unless they also included their pre-petition School Taxes, Tioga was demanding payment of a pre-petition debt in violation of the Stay. These Debtors contend that the NYRPTL does not prohibit the county treasurer from accepting a partial payment of taxes unless there is a provision in an order or plan. The

well case, Tioga was listed as a creditor for property taxes for the years 1993 through 1997.

**4.** These Debtors did not specifically list these School Taxes in their Petition.

**5.** In the Layton case $835.24 in School Taxes is listed on their bill, see Exhibit "C" of Layton's

Memo, and in the Dehart case $700.32 in School Taxes is listed on their bill. See Exhibit "C" of Dehart's Memo.

**6.** It is undisputed that Tioga sent this letter to the debtors in the Layton case; however, a copy was not submitted to the Court.

debtors in the Dehart and Layton cases point out that their Plans provide for the full payment of Tioga's claim. These debtors argue that Tioga should amend its proofs of claim to include the pre-petition taxes that are now owed to them as a result of the relevy of the School Taxes. Also, it is the assertion of these debtors that Tioga violated the Stay by continuing to add interest to the unpaid, but tendered County Taxes.

Each of the Debtors contend that the July letter and the September letter sent by Tioga violated Code § 362(b)(9)(B) because Tioga demanded payment and threatened to, among other things, file a Notice and Petition of Foreclosure and eventually take the Debtors' property. Thus, the Debtors argue that these letters constituted a demand for payment in violation of the Stay.

Tioga argues that it did not violate the Stay by relevying the School Taxes. Tioga points out that the relevied School Taxes were simply added to the County Taxes assessed and levied January 1997. Tioga contends that the act of relevying is the same as the making of an assessment or issuing a notice and demand for the payment of an assessment which is excepted from the Stay by Code § 362(b)(9)(D). Tioga asserts that it did not violate the Stay by refusing to accept the payment of the County Taxes of the debtors in the Layton and Dehart cases without the inclusion of the 1996–97 School Taxes which were also listed on their bill. After the School Taxes were relevied, Tioga argues that these taxes became a post-petition obligation that the debtors now owed to them. Also, Tioga takes the position that NYRPTL · § 1140 provides that it can refuse partial payment when a debtor has not submitted an order or plan providing for such partial payment. Tioga points out that the debtors in

the Dehart and Layton cases did not provide a copy of an order or plan so their partial payment was lawfully denied. Tioga contends that theses debtors should amend their respective Plans to provide for the payment of the 1996–97 School Taxes and then Tioga will file an amended proof of claim. Tioga asserts that its July letter was required by NYRPTL and was simply a notice of deficiency allowed by Code § 362(b)(9)(B).

Tioga argues that the Debtors must show that the violations of the Stay were willful and they must show actual damages. It is the position of Tioga that any violations of the Stay the Court finds were not willful on its part but instead constituted a good faith interpretation of the Code and the NYRPTL. Also, if relevying is found to be a violation, Tioga urges that it was inadvertent and caused, in part, by the failure of the debtors in the Layton and Dehart cases to provide for the payment of their School Taxes in their proposed chapter 13 plans. Tioga asserts that the Debtors are partially to blame for any problem or "damages" because they failed to object to the proofs of claim filed by Tioga which were not limited to what these debtors intended to be a pre-petition obligation. Tioga contends that the Debtors have not shown any actual damages which were not caused by their own actions other than the July letter which constituted a simple notice of tax deficiency.

## DISCUSSION

■ As a necessary preliminary matter, the Court addresses whether Tioga waived its sovereign immunity by filing proofs of claim against each of the Debtors.[7] Following the Supreme Court's decision in *Seminole*,[8] there has been a continuing dispute among courts as to whether Code § 106(b)[9]

---

**7.** The issue was raised by the Court at the hearing on December 8, 1997; Tioga argued that according to case law, it waived its sovereign immunity by filing proofs of claim. Due to the fact that it is unclear whether the basis for Tioga's waiver is grounded in the Code or the common law, the Court finds that it is necessary to examine the issue.

**8.** In *Seminole* the issue before the Supreme Court was whether Congress had the power pursuant to Article I to abrogate the sovereign im-

munity of the States. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996). The Supreme Court held that Congress cannot abrogate the sovereign immunity of the States pursuant to Article I. *Id.* at 72–73, 116 S.Ct. at 1131–32.

**9.** "A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same

is constitutional. One circuit court concluded that Code § 106(b) was unconstitutional because Congress does not have the "power to abrogate such immunity by 'deeming' a waiver." *Schlossberg v. Maryland, Comptroller of the Treasury (In re Creative Goldsmiths, Inc.)*, 119 F.3d 1140, 1147 (4th Cir.1997). Other courts view Code § 106(b) as providing for a limited waiver. · *See, e.g., Wyoming Dep't of Transp. v. Straight (In re Straight)*, 209 B.R. 540, 555–56 (D.Wyo.1997). The Second Circuit has not decided the issue but previously held that Code § 106(a) [10] constituted a waiver and not an abrogation. *995 Fifth Avenue Associates, L.P. v. New York State Dep't of Taxation and Finance (In re 995 Fifth Ave. Associates, L.P.)*, 963 F.2d 503, 508 (2d Cir.1992). Therefore, the Court will analyze the question of a waiver of sovereign immunity under Code § 106(b) as well as under the common law.

Pursuant to Code § 106(b) when a government unit files a proof of claim it waives its sovereign immunity with respect to a compulsory counterclaim brought against the government's claim. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) (interpreting former Code § 106(a)). The language of Code § 106(b) "tracks the language of Fed. R.Civ.P. 13(a), which defines a compulsory counterclaim as a claim which 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." ' *See Ossen v. Connecticut, Dep't of Social Services (In re Charter Oak Associates)*, 203 B.R. 17, 23 (Bankr.D.Conn.1996). In order to be able to seek monetary relief from a governmental unit under Code § 106, a debtor must show that its claim is property of the estate and that the government's claim and its claim arise out of the same transaction or occurrence. *Price v. United States (In re Price)*, 42 F.3d 1068, 1072 (7th Cir. 1994). In the matter before the Court, the first requirement is satisfied because the Debtors' post-confirmation claim for damages is property of the estate for purposes of § 106(b). *See id.* (citing *In re Price*, 130

B.R. 259, 268–69 (N.D.Ill.1991)). In determining whether there is a compulsory counterclaim, the Second Circuit looks to see if there is a logical relationship between the claim and the counterclaim. *See United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir.1979). Tioga has a claim against the Debtors for pre-petition property taxes arising from the failure of the Debtors to pay these taxes. *See In re Price*, 42 F.3d at 1073. The Debtors have a claim against Tioga for violations of the Stay in which it seeks damages which arise from Tioga's attempt to collect these pre-petition taxes by sending its July and September letters. *See id.* The Court finds that the "basis of both claims revolve around the same aggregate core of facts—the debtors' unpaid taxes." *Id.; see also Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115–16 (9th Cir. 1992). Therefore, Tioga waived its sovereign immunity with respect to the Debtors' claim for violations of the Stay.

"[I]t is long established that a state's participation in a bankruptcy proceeding can trigger a waiver of immunity." *In re 995 Fifth Ave. Associates*, 963 F.2d at 507. In the case *In re Headrick*, the state of Georgia filed a claim against the debtors for taxes and the debtors brought a claim against Georgia for violating the Stay by attempting to collect these taxes. *Headrick v. State of Georgia (In re Headrick)*, 203 B.R. 805, 807 (Bankr.S.D.Ga.1996). By filing a claim, the court in *Headrick* observed that Georgia submitted itself to the jurisdiction of the bankruptcy court to adjudicate the claim. *Id.* at 809 (citing *Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947)). The court in *Headrick* noted that "[b]ankruptcy courts maintain the equitable jurisdiction to achieve the orderly and expeditious disposition of bankruptcy cases without interference by parties within its jurisdiction, whether by statute or by consent." *Id.* at 810 (citing *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), *reh'g denied*, 498 U.S. 1043, 111 S.Ct. 721, 112 L.Ed.2d 709

transaction or occurrence out of which the claim of such governmental unit arose."

11 U.S.C. § 106(b).

10. Code § 106(a) was amended by the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 113, 108 Stat. 4106, 4117–18 (1994) and recodified as Code § 106(b).

(1991)). Therefore, the court in *Headrick* determined that Georgia also voluntarily submitted itself to the equitable power of the bankruptcy court which includes the enforcement of the Stay. *Id.* at 810. In the matter before the Court, Tioga filed a claim for pre-petition property taxes thereby submitting to the jurisdiction of this Court to adjudicate its claim. The Debtors' claim against Tioga is for damages based upon alleged violations of the Stay. The Court finds that Tioga, a county which is a unit of the state, is subject to suit by the Debtors for violations of the Stay because by filing proofs of claim for unpaid taxes Tioga submitted itself to the Court's equitable jurisdiction which encompasses the power to enforce the Stay.

■ The first issue for the Court to determine is whether Tioga violated the Stay in the Dehart and Layton cases by relevying their 1996–97 School Taxes into their 1997 County Taxes.[11] These debtors argue that the relevy of the School Taxes violated the Stay.[12] On the other hand, Tioga contends that relevying is the equivalence of making an assessment or issuing a notice and demand for payment of an assessment which is not subject to the Stay pursuant to Code § 362(b)(9)(D). Pursuant to NYRPTL § 1306(1) (McKinney 1989), school taxes are levied upon all the real property within a school district and become a lien on or before September 1.[13] The respective school districts where the real property of the debtors in the Dehart and Layton cases is located acquired a tax lien for School Taxes on or before September 1, 1996. These debtors then each filed a Petition on September 27, 1996. It is undisputed that the School Taxes constituted a pre-petition obligation of the debtors in the Dehart and Layton cases

when they filed their respective Petitions. Any school taxes that remain unpaid as of November 15 of the year in which they are levied are paid by the county treasurer to the chief fiscal officer of the school district. *See* NYRPTL § 1330(2), (4) (McKinney 1989). The county board of supervisors or legislators then relevy the unpaid school taxes on the real property of the delinquent school taxpayer as part of the following year's county tax.[14] *See id.* § 1330(5). As a result, these school taxes are then ultimately given to the county treasurer for reimbursement. *See id.* The debtors in the Dehart and Layton cases did not pay their School Taxes by November 15; as a result, these taxes were relevied and included in their bill for their respective County Taxes. It is undisputed that these debtors now owe Tioga for the amount of unpaid School Taxes instead of the school districts in which their respective real property is located. The Stay prohibits actions or acts against the debtor or property of the estate. *See* 3 COLLIER ON BANKRUPTCY ¶ 362.03, at 362–13 (Lawrence P. King ed., 15th ed. rev.1997). There are two policies which support the Stay. One is to provide equal treatment among creditors. *See S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1146 (5th Cir.1987). The other is to provide a respite for the debtor so that it has a chance to reorganize or liquidate. *See id.* It is necessary to determine whether the act of relevying a pre-petition obligation violated the Stay. There is no definition of relevy in the NYRPTL. According to the New York Court of Appeals, to levy is "to do that which is necessary to authorize the collector to collect the tax, to extend them against the taxable property." *In re Walker v. Board of Assessors*, 66 N.Y.2d 702, 704, 487 N.E.2d

---

**11.** Tioga is an entity subject to the Stay. *See* 11 U.S.C. §§ 362(a), 101(5).

**12.** Although the debtors in the Dehart and Layton cases fail to specify a provision of Code § 362(a), the Court finds that Code § 362(a)(4) or (5) is the source of this violation of the Stay depending upon whether the relevying occurred pre or post-confirmation of their Plan. Each of these debtors obtained confirmation of their respective Plans by an Order of this Court dated December 17, 1996.

**13.** School taxes become a lien when the school tax roll is confirmed which impliedly occurs before of warrant for the collection of the taxes is issued. *See* NYRPTL § 1312(1) (McKinney 1989); *Marine Midland Bank v. Greenblatt*, 96 A.D.2d 834, 835, 465 N.Y.S.2d 587 (2d Dept. 1983). School taxes remain a lien until they are paid. *See* NYRPTL § 1312(1).

**14.** The amount of unpaid school taxes and a penalty (seven percent of the amount of interest and principal) is relevied. *See* NYRPTL § 1330(5) (McKinney Supp.1997–98).

276, 496 N.Y.S.2d 419 (1985). The act of *levying* whereby a lien is *created* clearly violates the Stay. *See* 11 U.S.C. § 362(a)(4), (5). It is necessary to look at the effects of *relevying* to determine whether that act violates the Stay. The Court finds that prior to the relevy, the School Taxes constituted a lien on the property of the debtors in the Dehart and Layton cases for these taxes and after the relevy there remained a lien for these School Taxes.[15] Therefore, a lien was *not created* for the School Taxes on the real property of these debtors by the act of relevying. Instead, the relevying of the School Taxes simply transferred the obligation to pay these taxes from the school districts to Tioga. Creditors are permitted to transfer a claim or interest against the debtor's bankruptcy estate to a third party without violating the Stay. *See Tidwell v. Slocumb (In re Georgia Steel, Inc.)*, 71 B.R. 903, 909 (Bankr. M.D.Ga.1987) (noting that "a transfer merely substitutes the party that holds the interest or claim against the debtor's bankruptcy estate"). Code § 101(37) defines a lien as a "charge against or interest in property to secure payments of a debt." Therefore, the lien for School Taxes is an interest which can be transferred without violating the Stay. *See Citicorp Park Associates v. Aetna Life Ins. Co. (In re Citicorp Park Associates)*, 173 B.R. 823, 824 (Bankr.D.Me.1994) (holding that the purchase of a tax claim held by a city against a debtor's bankruptcy estate did not violate the Stay). *But see Village Savings Bank v. Town of Lewisboro (In re Haight)*, 52 B.R. 104, 106 (Bankr.S.D.N.Y. 1985) (holding that a town's proposed tax lien sale was an act to collect a prepetition claim as an attempt to coerce the debtor into paying his taxes). The act of relevying, whereby an interest is transferred, does not frustrate either of the purposes which support the Stay. The Court finds that the act of relevying the 1996–97 School Taxes as part of the 1997 County Taxes did not violate the Stay to the extent that the pre-petition debt for these taxes was simply transferred to Tioga who now holds the lien securing the payment of the School Taxes.

■ Next the Court considers whether Tioga violated the Stay by requiring the debtors in the Dehart and Layton cases to pay their School Taxes as a condition to its acceptance of the payment of their County Taxes. After the School Taxes were relevied, Tioga argues that they became a post-petition obligation and, therefore, it did not violate the Stay by requiring the payment of the School Taxes. As the Court previously noted, the relevying of the 1996–97 School Taxes simply transferred the obligation to pay these taxes from the school districts to Tioga. The fact that these School Taxes appear on these debtors' tax bills for 1997 County Taxes shows that they now owe Tioga for the School Taxes which remain a pre-petition obligation. Tioga argues in reliance on NYRPTL § 1140(3) that it cannot accept a partial payment of the amount owing on a bill for county taxes unless there is a provision in a debtor's plan or order providing for such partial payment. Tioga argues that the partial payment of these debtors was lawfully refused because neither of their Plans provide for partial payment to Tioga and there is no order providing for such treatment. The Court finds that pursuant to NYRPTL § 1140(3)[16] there is no requirement that a partial payment must be specifically provided for in a plan or order as a condition to acceptance. Instead NYRPTL § 1140(3) simply requires that a debtor provide proof that it is in bankruptcy and such proof may be in the form of an order or plan.[17] Al-

---

15. However, the Stay was violated to the extent that a seven percent penalty was also levied on the property of these debtors. *See* NYRPTL § 1330(5); 11 U.S.C. § 362(a)(4), (5). Therefore, this seven percent penalty is void. *See 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir.1987) (holding that acts in violation of the Stay are void).

16. "Partial Payments. Notwithstanding any law otherwise precluding the acceptance of a partial

payments of taxes, a partial payment may be accepted in relation to property which is the subject of a bankruptcy proceeding, provided that the payment is accompanied by satisfactory proof of the bankruptcy proceeding, such as an order or plan issued thereunder." NYRPTL § 1140(3) (McKinney Supp.1997–98).

17. However, based upon the plain meaning of NYRPTL § 1140(3), a plan or order is not the exclusive means for a debtor to provide *proof of bankruptcy*.

though the parties argue about whether Tioga should first amend its proofs of claim or the Debtors should amend their Plans, the Court finds that neither is necessary for Tioga to accept a partial payment. Clearly, such conditioning of payment violated the Stay as an act to collect a pre-petition debt. *See* Code § 362(a)(6). Due to the fact that an act in violation of the Stay is considered void, *see In re 48th St. Steakhouse*, 954 F.2d at 572, the Court finds that Tioga should have permitted the debtors in the Dehart and Layton cases to pay their County Taxes absent the School Tax component. Therefore, it necessarily follows that any additional interest that has been added to the obligation is also void.

■ The next issue to address is whether the July and September letters Tioga sent to the Debtors violated the Stay. Tioga contends that the letters are excepted from the Stay by Code § 362(b)(9)(B) which permits a governmental unit to issue a notice of tax deficiency to a debtor. The Debtors argue that the letters were a demand for the payment of a pre-petition obligation which violates the Stay.[18] The Debtors argue that the letters are similar to the notices in *In re Shealy* which the court determined were more than simply a notice of tax deficiency excepted by Code § 362(b)(9)[19] and rose to the level of an effort to collect a debt in violation of the Stay. 90 B.R. 176, 179 (Bankr. W.D.N.C.1988). In *Shealy* the first notice sent by the South Carolina Tax Commission ("Commission") stated that "demand is made for ... payment" and "[i]f payment is not made a warrant for distraint will be issued." *Id.* The court in *Shealy* found that this notice contained "strong language threatening issuance of a 'warrant of distraint'" if the debt was not paid. *Id.* A subsequent notice sent by the Commission threatened seizure of such things as wages and bank accounts and said that a warrant of distraint had been issued. *Id.* The court in *Shealy* found that the notices were "designed for no other pur-

pose than scaring the debtors into paying up before a 'warrant of distraint' is filed." *Id.* Based upon the content of the notices, the court in *Shealy* concluded that they were more than just a notice of tax deficiency and therefore did not fall under the Code § 362(b)(9) exception. 90 B.R. at 179.

The Court finds that the July and September letters are similar to the notices in *Shealy*. The July letter says that if the 1996 county taxes remain unpaid on December 10, 1997, then "we will file a Notice and Petition of Foreclosure." *See* Exhibit "F" of Dehart's memo; Exhibit "C" of Hartwell's memo. It also provides that "we urge you to pay this tax as soon as possible." *Id.* The 1996 county taxes clearly constitute a pre-petition obligation for all the Debtors. The September letter states that if the 1997 real property taxes are not paid by October 2, 1997, it "will be obliged to publish a notice" in newspapers. Exhibit "G" of Dehart's Memo; Exhibit "D" of Hartwell's Memo; Exhibit "F" of Layton's Memo. The September letter further provides that if the taxes remain unpaid on November 2, 1997, then Tioga "will be required by law to file a List of Delinquent Taxes in the Office of the County Clerk." *Id.* The September letter also urges the property owner to pay as soon as possible and states that "continued failure to pay will eventually result in the loss of the property." *Id.* In the Hartwell case, the debtors' 1997 county taxes were entirely a pre-petition obligation. The debtors in the Dehart and Layton cases argue that Tioga violated the Stay by sending the September letter as it attempted to collect the payment of the re-levied 1996–97 School Taxes, a pre-petition obligation. The Court finds that the July and September letters contain threats to publish a notice in the newspapers, file a list of delinquent taxes and file a notice and petition of foreclosure. Due to the content of these letters, the Court finds that they are more than mere notices and constitute a demand for payment in violation of the Stay.

18. The Debtors fail to point to a specific provision of the Code; the Court finds that Code § 362(a)(6) is applicable.

19. Code § 362(b)(9) was amended in 1994 and simply recodified as Code § 362(b)(9)(B). *See*

Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 116, 108 Stat. 4106 (1994). Therefore, cases prior to the amendment such as *In re Shealy* are relevant to the Court's analysis.

*See* 11 U.S.C. § 362(a)(6); *see also In re Headrick,* 203 B.R. at 810 (holding that the notice issued to the debtors which contained demands for payment and threats of collection violated the Stay as an attempt to collect a pre-petition debt). Therefore, the notices are void and without effect.[20] *See In re 48th St. Steakhouse, Inc.,* 954 F.2d at 572.

Pursuant to Code § 362(h),[21] actual damages are imposed for willful violations of the Stay. In the Second Circuit the standard for a willful violation is the following: "any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages." *Crysen/Montenay Energy Co. v. Esselen Associates, Inc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098, 1105 (2d Cir.1990). A court must find "maliciousness or bad faith on the part of the offending creditor" in order to award punitive damages. *Id.*

The Court has concluded that Tioga violated the Stay by sending demand notices seeking the payment of pre-petition obligations. It is necessary to determine whether this violation was willful. In the case *In re Bulson,* the IRS sent a collection notice for a pre-petition debt to a chapter 13 debtor in violation of the Stay. *United States v. Bulson (In re Bulson),* 117 B.R. 537, 538 (9th Cir. BAP 1990), *aff'd mem.,* 974 F.2d 1341 (9th Cir.1992). The IRS was listed on the petition of the debtor as a priority creditor. *See id.* The court in *Bulson* concluded that the IRS had knowledge of the Stay because it had notice of the bankruptcy case and participated in the case by filing a claim. *Id.* at 539. According to the court in *Bulson,* the action by the IRS was "clearly directed at the collection of the tax debt and therefore was intentional." *Id.* Based upon a finding of notice and a deliberate act, the court in *Bulson* concluded that the IRS's violation of the Stay was willful. *Id.; see also In re Solis,*

137 B.R. 121, 133 (Bankr.S.D.N.Y.1992) (holding that the IRS willfully violated the Stay by sending to a debtor a Notice of Intent to Levy on a prepetition debt). The Court finds that the facts in *Bulson* are similar to the facts in the matter before it. Tioga had notice of the bankruptcy proceedings of all the Debtors because it was listed as a creditor on the Petition of the Debtors. Also, Tioga filed proofs of claim for prepetition taxes against all of the Debtors. Therefore, the Court concludes that Tioga had knowledge of the Stay. Further, the Court finds that sending notices demanding payment constitutes a deliberate act. Therefore, Tioga willfully violated the Stay by sending the July and September letters.

The Court found that Tioga violated the Stay by conditioning its acceptance of the payment of the post-petition County Taxes of the debtors in the Dehart and Layton cases upon its receipt of the pre-petition School taxes of these debtors. Tioga argues that it relied in good faith on a provision of the NYRPTL which it believed did not allow a debtor to make a partial payment. Tioga also contends that it believed that the School Taxes became a post-petition obligation after they were relevied. It is undisputed that the debtors in the Layton and Dehart cases attempted to pay their County Taxes at least once. Tioga had notice of their respective bankruptcy cases and even participated in the bankruptcy process by filing proofs of claim against these debtors. The Court finds that a good faith mistake of law does not "relieve a willful violator of the consequences of the act." *Sansone v. Walsworth (In re Sansone),* 99 B.R. 981, 987 (Bankr.C.D.Cal. 1989); *see also In re Pinkstaff,* 974 F.2d 113, 115 (9th Cir.1992). Coercing a debtor into paying pre-petition taxes is a deliberate act. The requisite requirements for a willful violation are met because Tioga had knowledge of the Stay and deliberately acted in violation of

---

**20.** The July letter is void with respect to all of the Debtors as it attempts to collect a prepetition debt for 1996 county taxes. The September letter is void as it applies to the debtors in the Hartwell case as it attempts to collect pre-petition 1997 county taxes. The September letter is void in so far as it seeks the collection of the prepetition School Taxes from the debtors in the Layton and Dehart cases.

**21.** "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

the Stay. Therefore, the Court finds that both violations were willful and the Debtors are entitled to attorneys' fees as requested.[22] The Court finds that additional actual damages are not warranted because the Debtors have failed to establish damages beyond the attorneys' fees they requested.

Next the Court addresses whether the violations of the Stay entitle the Debtors to an award of punitive damages. In order to find Tioga liable for punitive damages, the Court must find that it acted with "maliciousness or bad faith." While the Court finds a callous disregard for the Stay, it finds no evidence of bad faith or maliciousness on the part of Tioga; therefore, punitive damages are not warranted. *See In re Solis,* 137 B.R. at 133 (holding that the punitive damages were not warranted where the IRS sent a Notice of Intent to Levy to a debtor). *Cf. Bank of Boston v. Baker (In re Baker),* 140 B.R. 88, 91 (D.Vt.1992) (finding that a debtor was entitled to punitive damages where bank was personally informed of debtor's bankruptcy several times and still repossessed the debtor's property).

Based on the foregoing, it is hereby,

ORDERED that the Debtors' motion is granted in part and denied in part as set for above; it is further

ORDERED that Tioga pay $500 in attorneys' fees to each of the Debtors, it is further

ORDERED that Tioga permit the debtors in the Dehart and Layton cases to pay their 1997 County Taxes exclusive of the relevied School Taxes and without any additional interest or penalties.

---

**22.** The Debtors also request that the Court order Tioga to discharge all of their pre and post-petition taxes. The debtors in the Dehart and Layton cases additionally request permission to pay their post-petition property taxes outside of their Plans. The Debtors fail to cite any statutory basis for the Court's authority to order an entity to discharge these obligations or allow debtors to pay their taxes outside of their Plans. These requests for relief are not remedies that a bankruptcy court may grant for a willful violation of the Stay. *See* Code § 362(h).