# United States Court of Appeals
## For the First Circuit

No. 02-1355

BILLINGS MANN AND CHERYL MANN,
Plaintiffs, Appellants,

v.

CHASE MANHATTAN MORTGAGE CORP.,
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella, Circuit Judge,

and Cyr, Senior Circuit Judge.

Christopher M. Lefebvre, with whom Law Offices of Claude
Lefebvre & Sons, Daniel A. Edelman, Tara L. Goodwin and Edelman,
Combs & Latturner were on brief for appellants.
LeAnn Pedersen Pope, with whom Edward J. Lesniak, Burke,
Warren, MacKay & Serritella, P.C., Melissa E. Darigan, and
Partridge, Snow & Hahn, LLP were on brief for appellee.

January 17, 2003

**CYR, <u>Senior Circuit Judge</u>**. Plaintiff-appellants Billings and Cheryl Mann, husband and wife, appeal from a district court judgment which (i) dismissed their claim that Chase Manhattan Mortgage Company ("Chase") violated the automatic stay provisions of the Bankruptcy Code, then (ii) denied their motions to amend the complaint. We affirm the district court judgment.

## I

## BACKGROUND

In 1993, the Manns and Chase entered into a $126,950 mortgage loan and related security agreement which conveyed a lien on the Manns' principal residence. The security agreement provided, <u>inter</u> <u>alia</u>: "[Chase] may do and pay for whatever is necessary to protect the value of the Property and [its] rights in the Property . . . [including] paying reasonable attorneys' fees. . . . Any amounts disbursed by [Chase] under this paragraph . . . shall become additional debt of the Borrower[s] secured by this Security Instrument."[1]

After the Manns defaulted on their mortgage payments in 1988, Chase fixed a date for a foreclosure sale and advised the

---

[1]We review the summary judgment ruling <u>de</u> <u>novo</u>, accepting all record evidence in the light most condign to the Manns. <u>See</u> <u>In re Gosselin</u>, 276 F.3d 70, 71-72 (1st Cir. 2002).

Manns that it planned to inspect the property.[2] On April 9, 1999, the Manns filed their joint chapter 13 petition.

The $7,342.08 proof of claim submitted by Chase in the ensuing chapter 13 proceedings included existing loan-payment arrearages ($5,698.55), as well as related prepetition attorney fees and inspection costs ($1,643.53). Moreover, unbeknownst to the Manns, Chase continued to accrue <u>postpetition</u> attorney fees against the Manns in its internal records, but neither submitted a proof of claim in the chapter 13 proceedings nor billed the Manns for the postpetition fees.

The bankruptcy court order confirming the chapter 13 plan (i) allowed the $7,342 proof of claim filed by Chase, representing the full mortgage arrearage and prepetition attorney fees, (ii) directed the Manns to make all future mortgage payments directly to Chase as and when due,[3] and (iii) prescribed that unsecured creditors were to receive not less than 17% on their allowed claims.

Following the confirmation of their chapter 13 plan, the Manns objected to the proof of claim filed by Chase, specifically

_____

[2]The district court rejected the contention that the inspection and foreclosure notifications issued by Chase violated the terms of the Security Agreement. The Manns do not challenge these rulings on appeal.

[3]Unless otherwise provided in the chapter 13 plan, title to all property of the chapter 13 estate vests in the debtor upon confirmation. <u>See</u> <u>Barbosa</u> v. <u>Soloman</u>, 235 F.3d 31, 37 (1st Cir. 2000).

3

challenging its inclusion of $1,643.53 in prepetition attorney fees and inspection costs. Before the bankruptcy court ruled on their objection, however, the Manns withdrew it, opting instead to institute their putative class-action lawsuit in the United States District Court for the District of Rhode Island. The class-action complaint alleged, inter alia, that Chase willfully violated the automatic stay provision, see Bankruptcy Code § 362, 11 U.S.C § 362, in that, "subsequent to plaintiffs . . . filing bankruptcy," Chase continued to "charge" — viz., record charges in its internal loan files — the Manns for attorney fees and inspection fees incurred postpetition.

Following discovery, Chase submitted its motion for summary judgment and the Manns submitted a motion to amend their complaint, claiming that Chase improperly included a $2.00 surcharge in each of its prepetition inspection charges. The motion to amend also sought to delete the Manns' earlier allegation that Chase improperly had charged postpetition inspection fees. Subsequently, the Manns submitted another motion to amend their complaint so as to include Raul and Jo-Ann Rodrigues as coplaintiffs. The second amended complaint asserted that Chase recently had billed the Rodrigueses for $2,756.55 in postpetition attorney fees, notwithstanding its stated policy (reiterated in the instant appeal) that it does not attempt to collect such postpetition attorney fees from its mortgagors, provided they

4

complete their chapter 13 plan payments and occasion no further mortgage-payment defaults.

The district court, in an unpublished opinion, directed summary judgment against the Manns on their section 362 claim, then denied their motions to amend the complaint.

**II**

**DISCUSSION**

**A.   The Automatic Stay**

The Manns first contend that the mere recordation of postpetition, preconfirmation attorney fees incurred by Chase, on its internal books, violated the automatic stay, in that it constituted either (i) "an[] act to obtain possession of the property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), or (ii) "an[] act to create, perfect, or enforce any lien against property of the estate," id. § 362(a)(5).  Of course, acts undertaken in violation of the automatic stay are not only void, see Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 976 (1st Cir. 1997), but may expose the violator to monetary sanctions as well, see 11 U.S.C § 362(h).

Generally speaking, the automatic stay prescribed in Bankruptcy Code § 362(a) serves the salutary purpose of deterring creditors from jockeying for advantage by, for instance:  (i) seeking to convert an unsecured prepetition claim into a secured

5

claim; (ii) obtaining actual possession of property of the chapter 13 estate; or (iii) attempting to perfect a judicial, statutory or other lien in such property.  See In re Soares, 107 F.3d at 975-76. Thus, the automatic stay provision is designed to forfend against the disorderly, piecemeal dismemberment of the debtor's estate outside the bankruptcy proceedings.  See id.

Viewed in this light, these postpetition bookkeeping entries by Chase did not implicate Bankruptcy Code § 362(a)(3), since such unilateral accruals of amounts assertedly due, but in no manner communicated to the debtor, the debtor's other creditors, the bankruptcy court, nor any third party, plainly are not the sort of "act" Congress sought to proscribe.  See, e.g., In re Sims, 278 B.R. 457, 471 (Bankr. E.D. Tenn. 2002) (noting that "creditor could produce all kinds of paperwork which if communicated to a debtor or a third party would violate the stay, but absent that communication, some overt act, or resulting effect on the debtor, no [§ 362] violation has occurred") (collecting cases; emphasis added).  Thus, the Manns' property, presently revested in them following the confirmation of their chapter 13 plan, remains unaffected by the internal bookkeeping entries initiated by Chase. As a consequence, absent any overt attempt by Chase to recover these fees from the chapter 13 estate in the future, as (i) by instituting collection proceedings which the Manns or the chapter 13 estate would be forced to defend against, or (ii) by

6

transmitting "harassing" communications to the Manns, the Chase bookkeeping entries represent mere unilateral notations regarding attorney fees which it assertedly incurred, thereby according it no identifiable legal advantage over other creditors.

Nor did these mere bookkeeping entries, albeit effected postpetition and preconfirmation, violate Bankruptcy Code § 362(a)(5). The security agreement states that Chase may include certain attorney fees in the Manns' loan balance. Consequently, these postpetition entries do indeed pose the prospect that the amount due Chase, hence subject to its security interest, may increase. Nevertheless, a mere potentiality of future liability reasonably cannot be considered the "creation" of a new and enlarged lien. The Manns have made no evidentiary proffer that Chase has undertaken any action to modify its original record lien. Although a secured creditor may record a lien indicating an original amount certain (e.g., the original loan balance), the amount of a lien typically fluctuates during the term, as the debtor repays the mortgage debt or other senior indebtedness, or as additional charges accrue to their loan account. Thus, until such time as Chase initiates some external effort, either to fix or recover upon, the amount of its secured or in rem indebtedness, the

7

lien subsists simply as a recorded prepetition lien of indeterminate value.[4]

The case authority cited by the Manns is plainly distinguishable. For instance, in In re Stark, 242 B.R. 866 (Bankr. W.D.N.C. 1999), the bankruptcy court imposed subsection 362(h) sanctions against a secured creditor on the grounds that (i) the loan documents accorded the secured creditor no express authority to assess postpetition inspection fees; and (ii) the creditor nonetheless "attempted to collect" the inspection fees by mailing the debtors monthly statements reflecting the postpetition inspection fees. Id. at 869, 872.[5] Chase, on the other hand, never communicated the attorney-fee charges to anyone; indeed, the Manns would not have learned of these charges but for their subsequent discovery proceedings before the district court. Cf. In re Soares, 107 F.3d at 975 (noting that automatic stay is designed

---

[4]The proof of claim submitted by Chase in the chapter 13 proceeding valued the secured claim at only $124,743.32. There is no indication that Chase included any postpetition attorney fees.

[5]Similarly, in Fessenden v. Maine Savs. Bank (In re Nield), 95 B.R. 259 (Bankr. D. Me. 1989), the secured creditor unilaterally removed funds deposited in an escrow account, in the bank's possession, and which had been set aside to defray the insurance premiums and taxes on the mortgaged property as due. Id. at 260-61. And the court in In re Megan-Racine Assocs., Inc., 203 B.R. 873 (Bankr. N.D.N.Y.), aff'd, 102 F.3d 671 (2d Cir. 1996), noted that the creditor had "engaged in [the type of] self-help" prohibited under § 362 by unilaterally withdrawing sums from an escrow account in its possession. Id. at 878, 883.

to afford debtors "breathing room" free from creditor "harassment").

## B. **Bankruptcy Code § 506(b)**

Next, the Manns assert that Chase violated the automatic stay by failing to submit a preconfirmation request, pursuant to Bankruptcy Code § 506(b),[6] that any postpetition attorney fees be included in its allowed secured claim. Chase contends, on the other hand, that the Manns waived any "claim" based on a § 506(b) violation, by failing to include it in their several complaints.

Although Chase correctly states that the Manns failed to assert a § 506(b) "claim" in their various complaints,[7] their argument was squarely raised and adequately preserved — as a theoretical adjunct to their section 362 claim — in their

---

[6]Bankruptcy Code § 506(b) provides: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b). Subsection 506(b) applies exclusively to postpetition fees accrued prior to confirmation of the plan. See 4 Lawrence P. King, Collier on Bankruptcy ¶ 506.05[3] (15th rev. ed. 2001).

[7]The Manns never mentioned § 506(b) in their complaint, but simply noted that Chase had made its postpetition internal bookkeeping entries "without obtaining court approval . . . [which] violates the automatic stay." These references reasonably could not have placed the district court on fair notice that the Manns were claiming a § 506(b) violation. Instead, the reference more plausibly implied simply that Chase was required to seek approval from the court for relief from the automatic stay pursuant to § 362(d).

9

opposition to summary judgment. Citing five cases, the Manns asserted: "The proper procedure for [Chase] to follow if it desires to be compensated for post-petition charges, is to request Court approval of those charges, pursuant to § 506 of the Code, and Bankruptcy Rule 2016." In other words, the Manns contended that any unilateral imposition of postpetition fees by Chase must be violative of § 362(a), given that the Code establishes specific prerequisites and a particular mechanism for imposing such fees, viz., § 506(b).

Nevertheless, the Manns' simple citation to Bankruptcy Code § 506(b) is insufficient to advance their § 362 claim on the merits. As a "significant exception" to the general rule that creditors cannot recover postpetition fees in bankruptcy proceedings, Bankruptcy Code § 506(b) permits an oversecured creditor to request that the bankruptcy court permit postpetition fees to be included in its oversecured claim, provided that the postpetition fees were (i) contemplated by the underlying contract; and (ii) "reasonable" in amount. See 4 Lawrence P. King, Collier on Bankruptcy ¶ 506.04[3] (15th rev. ed. 2001). Since there are numerous circumstances in which a chapter 13 discharge would not extinguish a secured claim, see Doral Mort. Corp. v. Echevarria (In re Echevarria), 212 B.R. 185, 187 (B.A.P. 1st Cir. 1997), § 506(b) accords secured creditors an advantageous prospect of recovering full payment of their postpetition attorney fees.

10

As support for their contention, however, the Manns rely exclusively upon a series of unpublished bankruptcy court decisions which hold that a creditor's failure to disclose, during the chapter 13 proceedings — e.g., by filing a proof of claim — its internal recordation of such postpetition, preconfirmation attorney fees on its internal books violates § 506(b), in that such nondisclosure frustrates the "fresh start" policy underlying the Bankruptcy Code by precluding chapter 13 debtors from availing themselves of a reasonable opportunity to satisfy (viz., discharge) such attorney fees through their chapter 13 plan. See, e.g., In re Slick, No. 98-14378 (Bankr. S.D. Ala. May 10, 2002). Assuming, arguendo, the correctness of its holding, a matter we expressly refrain from resolving, the Slick series of cases is readily distinguishable. That is to say, Slick directly holds that the creditor's nondisclosure violated § 506(b), rather than § 362, and that the creditor's fees were thus discharged. Id., slip op. at 12-13.

By contrast, the Manns neither contended before the district court that Chase violated § 506(b), nor requested that the district court declare the attorney fees discharged under their chapter 13 plan, but instead simply cited to § 506(b) as an adjunct to their § 362 claim asserting a violation of the automatic stay, viz., by way of statutory evidence informing the meaning of the term "act" under § 362(a). It is not surprising, therefore, that

11

the district court opinion did not rely upon § 506(b) as a discrete basis for its decision. Whatever the legal effect of the failure to submit an application or proof of claim under § 506(b), a matter which we need not resolve here,[8] any such omission or waiver plainly would not constitute the sort of overt, affirmative act stayed by § 362(a). Thus, the § 362 claim, as submitted by the Manns, was properly dismissed by the district court.

---

[8]Nevertheless, it is important to note that there is a serious question as to whether a discrete § 506(b) claim would be sufficiently ripe for adjudication at the present juncture. Normally, a claim is unripe where there are too many contingencies which might moot the claim. See, e.g., Bowen v. First Family Fin. Servs., Inc., 233 F.3d 1331, 1340 n.7 (11th Cir. 2000). Chase has never billed the Manns for these fees, nor communicated to any third party its putative entitlement to the fees. Moreover, Chase represents on appeal that it will never seek to collect the fees unless the Manns were to default on their mortgage once again. See Chamber of Commerce v. Reich, 57 F.3d 1099, 1100 (D.C. Cir. 1995) (in assessing ripeness, court should consider, inter alia, the hardship upon the parties were the court to withhold immediate review of the claim). Although we might be reluctant to accept mere bald assurances regarding the latter contingency, it cannot be said with any confidence that its collection efforts are inevitable.

Second, although plainly not determinative on its own, we note that the Manns have not yet completed their payments under the confirmed plan. Unlike a chapter 11 debtor, which receives its discharge upon plan confirmation, chapter 13 debtors obtain a discharge only upon the successful completion of their required payments under the confirmed plan. See In re Roberts, 279 F.3d 91, 93 n.1 (1st Cir. 2002). Should the Manns fail to do so, none of their debts would be discharged, let alone their putative contractual obligation to Chase for its postpetition, preconfirmation attorney fees. Cf. In re Echevarria, 212 B.R. at 188 (noting that creditor which waived recourse to § 506(b), until completion of confirmed plan, thereby waived right to collect § 506(b) postpetition interest).

12

## C.    The Motions to Amend the Complaint

Finally, we affirm the district court ruling rejecting the motions to amend the Manns' complaint to plead new facts allegedly disclosed during discovery.   The Manns sought (i) to allege that Chase, absent any contractual authorization, added a $2.00 "surcharge" for each prepetition inspection charge posted to their mortgage loan account, and (ii) to add, as coplaintiffs, the Rodrigueses, whom Chase recently had billed for the same type of postpetition, preconfirmation fees following the entry of the Rodrigueses' chapter 13 discharge, even though the Rodrigueses had not defaulted again on their mortgage payments.

Trial court rulings on motions to amend a complaint are reviewed for abuse of discretion.  See Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 71 (1st Cir. 2001).  Of course, the trial court may deny leave to amend, as a matter of law, where a proposed amendment would not cure the deficiencies in the original complaint.  See Grant v. News Group Boston, Inc., 55 F.3d 1, 5 (1st Cir. 1995).  So it is here.

The first proposed amendment was defective due to the fact that the Manns failed to file timely objection to the inclusion of the subject surcharges in their chapter 13 plan.  The second amendment was deficient in that (i) the Manns submitted an insufficient Rule 56 proffer regarding their § 362 claim for the postpetition, preconfirmation attorney fees, and (ii) even

13

assuming, <u>arguendo</u>, that the Rodrigueses held a viable claim under either § 362 or § 506(b), their standing did not confer standing upon the Manns.

**Accordingly, <u>the</u> <u>district</u> <u>court</u> <u>judgment</u> <u>is</u> <u>affirmed</u>. <u>The</u> <u>parties</u> <u>shall</u> <u>bear</u> <u>their</u> <u>own</u> <u>costs</u>. <u>SO</u> <u>ORDERED</u>.**