**In re John N. SULLIVAN, Debtor.**

No. 03–65486.

United States Bankruptcy Court,
N.D. New York.

April 2, 2007.

Bodow Law Firm, PLLC, Theodore L. Araujo, Esq., of counsel, Syracuse, NY, for Debtor.

Shapiro & Di Caro, LLP, John A. Di Caro, Esq., of counsel, Rochester, NY, for Washington Mutual Bank, F.A.

### MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Bankruptcy Judge.

Under consideration by the Court is a motion ("Motion") filed by John N. Sullivan ("Debtor") on March 10, 2005, pursuant to § 362(h) of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330 (the "Code").[1] Claiming violations of the auto-

---

1. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was signed into law on April 20, 2005, and made applicable to cases filed after October 16, 2005. For purposes of this decision "Code" refers to the law in effect at the time

matic stay provisions of 11 U.S.C. § 362, the Debtor requests $10,000.00 in actual, statutory and punitive damages against Washington Mutual Bank, F.A. ("Washington Mutual") and its agent, the Law Offices of Shapiro & DiCaro, LLP ("Shapiro"),[2] as well as contingent attorney fees, or, in the alternative, $2,000.00 in attorneys' fees, and an Order vacating and discharging any indebtedness claimed by Washington Mutual.[3]

An Affirmation in Opposition to Motion Claiming Violation of Automatic Stay ("DiCaro Affirmation") was filed on April 12, 2005; a Memorandum of Law in Opposition to Debtor's Motion ("Shapiro Memorandum") was filed on May 11, 2005, and a Supplemental Affirmation in Opposition to the Motion ("DiCaro Supplemental Affirmation") was filed on July 13, 2005.

The Motion was heard on July 19, 2005 at the Court's regular motion term in Syracuse, New York. Following oral argument, the Court allowed discovery by both parties, and subsequently scheduled an evidentiary hearing for March 22, 2006. Following the evidentiary hearing, the Court gave the parties until April 28, 2006, to submit any post-hearing memoranda of law. This deadline was subsequently extended to May 19, 2006. On that date Shapiro submitted its Post–Hearing Memorandum of Law (Shapiro Post Hearing Memorandum").

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(*O*).

## FACTS

The Debtor filed a voluntary petition pursuant to Chapter 13 of the Code on August 8, 2003, along with his plan. On September 4, 2003, Shapiro prepared and filed a proof of claim on behalf of Washington Mutual which set out an outstanding mortgage balance in the amount of $2,169.22, and subsequently billed Washington Mutual $500.00 in attorney fees. No attorney fees were included in the proof of claim Shapiro filed with the Court. An Order confirming the plan was signed on December 16, 2003. In November of 2004 the Debtor contacted Washington Mutual to obtain a payoff amount for the mortgage which encumbered his personal residence, and which was within several hundred dollars of being paid in full after nearly 30 years of payments. The Debtor received in response a December 6, 2004 payoff letter from Shapiro ("Payoff Letter") containing the mortgage's $175.53 principal balance, and a line item for "Bankruptcy Attorney Fees" of $500.00.[4] Upon advice of counsel, Debtor paid Washington Mutual only the principal, interest and late charges. On March 3, 2005 the Debtor filed a Motion to Permit Sale of Real Property, Debtor's primary residence. This Motion was granted on April 22, 2005, and the sale closed on May 6, 2005.

the Debtor's case was filed, unless otherwise indicated.

2. The Motion is captioned as "... against: Law Offices of Shapiro & DiCaro, LLP." However, the body of the motion seeks relief "... from the creditors and/or creditors [*sic*] agents ..." and the "wherefore clause" requests damages "against the creditor and their [sic] agent, jointly and severally."

3. Insofar as the underlying note and mortgage have been paid off by the sale of the real property securing that debt, the Court will disregard this particular request for relief.

4. The Payoff Letter also contained provisions for interest and late charges of $7.15, court document costs of $25.00, and a credit for unapplied funds of $123.63.

According to testimony of Patricia Mourick, paralegal to Debtor's counsel, when she contacted the Shapiro law firm in March 2005, a Shapiro attorney purportedly related that the abstract of title for Debtor's residence would not be released until the $500 "Bankruptcy Attorney Fees" were paid by Debtor. *See* Transcript of March 22, 2006 Evidentiary Hearing ("Transcript"), pgs. 21, 22, 39. Shapiro denied not only that it or Washington Mutual ever had the abstract of title, but that any of its personnel would ever withhold such a closing document in order to collect fees. *See* Transcript, p. 66; DiCaro Affirmation, ¶ 10. Anne Miller–Hulbert, an attorney in Shapiro's firm, also testified that no such *quid pro quo* was demanded. *See* Transcript, pgs. 73, 79, 80, 91, 101. Shapiro ultimately allowed the closing to take place after funds to cover the "Bankruptcy Attorney Fees" were placed in escrow pending the Court's decision in this matter. *See* DiCaro Supplemental Affirmation, ¶ 11.

### ARGUMENT

Debtor argues that the Payoff Letter from Shapiro requesting $500 in "Bankruptcy Attorney Fees," and Washington Mutual's and/or Shapiro's subsequent alleged refusal to provide Debtor with an abstract of title in order to consummate the sale of Debtor's home until Debtor paid the $500 Bankruptcy Attorney Fees constitutes a continuation of collection activity after the filing of Debtor's petition. Also, because both the creditor and its agent had actual and/or constructive notice of the Debtor's filing, the Debtor contends that these actions constitute a willful violation of § 362(a) of the Code.

The Debtor also argues that this willful Code § 362(a) violation damaged the Debtor by: causing psychological stress, fear and anxiety after he was assured by counsel that the Code § 362(a) stay would protect him from ongoing collection efforts by creditors; interfering with the Debtor's psychological well being because such contact was perceived as antagonistic; forcing the Debtor to initiate further contact with his counsel during normal working hours to ensure that his petition was properly filed; and by calling into question the advice Debtor received from his bankruptcy counsel.

The Debtor asserts that where there is a willful violation of Code § 362(a), and no evidence of physical harm, actual damages for emotional distress can be awarded where other corroborating evidence is presented, or if the circumstances of the violation are so egregious that they clearly merit emotional distress damages. Debtor argues that non-experts such as the Debtor's family members, friends or co-workers may testify as to the presence of mental anguish and emotional harm. *See Varela v. Ocasio*, 272 B.R. 815 (1st Cir. BAP (P.R.) 2002). In addition, Debtor asserts that even absent actual damages, where there is a willful violation of the automatic stay, Debtor is entitled to attorney's fees. *See In re Layton*, 220 B.R. 508 (Bankr. N.D.N.Y.1998). Debtor also argues that a one-third contingency fee award is appropriate for Debtor's counsel in an action for damages such as this.

Shapiro argues that it never had an abstract of title for the Debtor's property, and would not have refused to provide one if it did have it. Additionally, Shapiro questions whether such a refusal, if it did occur, would justify a claim against Shapiro. (*See* DiCaro Affirmation, ¶ 10).

Shapiro asserts that of the $500 fee, $150 was for pre-confirmation services,

$350 for post-confirmation services.[5] Shapiro acknowledges that the $150 pre-confirmation portion should not have been included in its Payoff Letter to the Debtor, because Shapiro did not include this amount in the proof of claim it prepared, or submit an application for compensation to the Court in compliance with Federal Rule of Bankruptcy Procedure ("Fed.R.Bankr.P.") 2016.[6] *See* DiCaro Affirmation, ¶ 7. As such, Shapiro acknowledges that this portion of its fee is in violation of Code § 506(b), and should be disallowed.

Shapiro insists, however, that the $350 portion of its fee, because it is attributable to post-confirmation matters, is not subject to the Code § 506(b) requirement. Moreover, Shapiro argues that its non-disclosure of the $150 in pre-confirmation attorney fees, while violating Code § 506(b), in no way rises to the level of a Code § 362(a) violation. In support of that contention, Shapiro cites *In re Mann*, 316 F.3d 1, 6–7 (1st Cir.2003) (holding that "postpetition bookkeeping entries by [mortgagee] did not implicate Code § 362(a)(3), since such unilateral accruals of amounts assertedly due, but in no manner communicated to the debtor ... plainly are not the sort of 'act' Congress sought to proscribe.") *See* Shapiro Memorandum, p. 3

As for the $350 of the "Bankruptcy Attorney Fees" attributable to the post-confirmation period, Shapiro argues that collecting this amount from the Debtor was not an action against property of the estate because confirmation vested the property of the estate in the Debtor. Shapiro cites *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333 (11th Cir.2000) for the proposition that payment of post-confirmation attorneys fees from the debtor's regular monthly payments paid post-confirmation does not violate § 506(b) or § 362 of the Code.

Shapiro asserts that "the only potential damage that could have been caused by this entire incident was a delay in closing causing the Debtor to lose his deal." DiCaro Supplemental Affirmation, ¶ 11. Shapiro maintains, however, that "any delay incurred in the closing of the sale of the Debtor's property is directly attributable to the failure of [Debtor's] attorney's office." Shapiro Post Hearing Memorandum, p. 3.

## DISCUSSION

The Court's discussion will be divided among the following issues: a) whether the Shapiro Payoff Letter constitutes a Code § 362(a) stay violation; b) whether Shapiro's refusal to release the Debtor's abstract of title, or delay the Debtor's closing, constitutes a Code § 362(a) stay violation; c) whether Debtor is entitled to damages for any Code § 362(a) violation; and, d) whether Debtor is entitled to attorney fees.

### The Shapiro Payoff Letter

The first issue is whether Shapiro's Payoff Letter to the Debtor constituted a violation of the automatic stay. In this instance it may be helpful to first examine Shapiro's argument that the Payoff Letter did *not* rise to the level of a Code § 362(a) violation. The Court will initially confine its analysis to the $150 admittedly pre-

---

**5.** The Debtor's Plan was Confirmed on December 16, 2003.

**6.** Fed.R.Bankr.P.2016 reads, in relevant part, as follows: "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."

confirmation portion of the "Bankruptcy Attorney Fees."

Shapiro cites *In re Mann*, 316 F.3d 1, in support of its argument that its "non-disclosure" of the $150 in pre-confirmation attorney fees, while violating Code § 506(b), in no way rises to the level of a Code § 362 violation.[7] However, *In re Mann* involved a debtor's claim that "... the mere recordation of post-petition, pre-confirmation attorney fees incurred by [mortgagee], on its internal books, violated the automatic stay ..." *Id.* at 5. After examining the impact of such internal notations on the debtor, the *Mann* court held that "... post-petition bookkeeping entries by [mortgagee] did *not* implicate Bankruptcy Code § 362(a)(3), since such unilateral accruals of amounts assertedly due, *but in no manner communicated to the debtor* ... plainly are not the sort of 'act' Congress sought to proscribe." *Id.* at 6 (emphasis added). Moreover, in distinguishing the cases relied upon by the debtor in that case, the *Mann* court noted that the mortgagee "... never communicated the attorney-fee charges to anyone ..." (*Id.* at 9), and that "... [the mortgagee] has never billed the [debtors] for these fees ..." *Id.* at 15. Thus, apart from being clearly distinguishable from the instant case, *In re Mann* can be read to stand for exactly the contrary proposition to that propounded by Shapiro. The "Bankruptcy Attorney Fees" in the instant case *were* communicated to the debtor; the mortgagee *did* in fact bill the debtor for these fees; and the fees in question were most assuredly *not* a "mere recordation of post-petition, pre-confirmation attorney fees ... on [mortgagee's] internal

books ..." *Id.* at 5. Shapiro cites no other case law in support of its argument on this point.

Shapiro may have belatedly realized the extent to which the reasoning and holding of *In re Mann* undermines its own argument. In its Post Hearing Memorandum, Shapiro states, in an attempt to harmonize the mortgagee's actions in *Mann* and its own in the instant case, that "... *the actual manner of requesting or charging such unauthorized attorney's fees is irrelevant to whether there is a deemed violation of § 362(a).*" Shapiro Post Hearing Memorandum, p. 5. (emphasis added). If by this statement Shapiro is asking the Court to determine that the difference between an internal bookkeeping entry regarding pre-confirmation attorney fees on a mortgagee's own books, and a payoff letter attempting to collect those same fees sent by a law firm directly to a Chapter 13 debtor is irrelevant, this Court declines to do so.

Moreover, this Court is troubled by the $150/350 pre-confirmation/post-confirmation breakdown of the "Bankruptcy Attorney Fees." During cross-examination at the March 22, 2006 evidentiary hearing, Debtor's attorney asked Anne Miller–Hulbert, the Shapiro attorney who prepared the proof of claim whether "... it's reasonable to charge $150.00 for a one-page non-itemized proof of claim ... ?" *See* Transcript, p. 89. Miller–Hulbert responded that "... beyond ... filing the proof of claim, ... we open the file, we review the docket, review the mortgage documents. We did have a mortgage. So ... I don't think $150.00 is unreasonable." *See* Tran-

---

7. In its Memorandum of Law arguing against a Code § 362(a) violation, Shapiro speaks only of the "non-disclosure" of the $150 fee, explicitly avoiding any mention of its letter to the Debtor requesting payment of that amount. *See* Shapiro Memorandum of Law,

p. 3. Only later, in its Post Hearing Memorandum of Law, does Shapiro acknowledge that it had actually "charged" the pre-confirmation attorney's fees. *See* Shapiro Post Hearing Memorandum, pgs. 4–5.

script, p. 90. If this is in fact what the Shapiro firm charged its client $150 for, there is a disparity between its pre and post-confirmation breakdown of fees. The Debtor filed its petition on August 8, 2003. Shapiro filed the proof of claim on Sept. 4, 2003. The Order confirming Debtor's plan was not signed until Dec. 16, 2003. The intervening thirteen weeks between Shapiro's filing of its client's proof of claim and the Debtor's Order of Confirmation would appear to require a higher degree of monitoring than the post-confirmation period. Surely the fees for this thirteen weeks of monitoring, like the $150 Shapiro charged for filing the proof of claim, opening the file and reviewing the mortgage, would be covered by Code § 506(b). But Shapiro argues that it did not charge its client for monitoring the case during these thirteen weeks between Sept. 4th and confirmation on Dec. 16th, 2003. Shapiro has submitted no hourly or even weekly breakdown of its fees to assist the Court in determining whether this is in fact true.[8]

Here, another case cited by Shapiro, *In re Slick*, 2002 Bankr.Lexis 772 (Bankr. S.D.Al.2002), is informative. *Slick*, like the instant case, involved a mortgagee which did not disclose legal fees in its proof of claim, with the result that the Debtor did not know the fee was being assessed against him or her.[9] The *Slick* court held that "[c]reditors should not be able to assess fees to the account of a person in bankruptcy without the person's knowledge.... Undisclosed fees prevent a Debtor from paying the fees in his or her plan—an option that should not be lost simply because a creditor chooses not to list the fee and expects to collect it later." *Id.* at 10. The *Slick* court addressed the pre and post-confirmation breakdown of attorney fees in a fact pattern remarkably similar to the instant case:

> The Court does not even need to reach the issue of the propriety or reasonability of a particular fee or type of fee. When an attorney's fee for filing a proof of claim is completely undisclosed, it simply cannot be charged. As to the fees of [mortgagee's] counsel that are not broken down as to pre- and post-confirmation charges, all charges must be presumed to be pre-confirmation in the first billing because the Court was given no evidence (or very little) to the contrary. The evidence indicated that the first billing was made at about the time of confirmation. Therefore, when the Court speaks of how to treat fees in its order for judgment, the entire first bill of $450.00 that was posted to debtors' accounts must be expunged and must be refunded, if paid by the debtor.

*In re Slick*, 2002 Bankr.Lexis 772 at 24–25.

As in *Slick*, the first billing of attorney fees in the instant case was made at about the time of confirmation.[10] As in *Slick*, the Shapiro firm's fee for filing a proof of claim was completely undisclosed.[11] As in *Slick*, very little evidence was given to

---

8. The Court will take judicial notice of its own case docket in connection with this contested matter. While not necessarily determinative of services provided by Shapiro to its client, the Court notes that subsequent to the entry of the Order of Confirmation on December 16, 2003, and prior to the December 6, 2004 Payoff Letter, there are no further entries on the docket relating to any matter initiated by Washington Mutual.

9. The *Slick* case involved undisclosed pre-confirmation attorney fees for proof of claim preparation.

10. "[After filing the proof of claim] we subsequently submitted a bill to our client in the amount of $500.00." DiCaro Affirmation, ¶ 5.

11. DiCaro does not dispute that the Shapiro firm's fee for filing the proof of claim was not disclosed.

support the contention that all charges were not for pre-confirmation services.[12] Thus, this Court is compelled to adopt the rationale in *Slick* that all legal fees billed at time of confirmation must be presumed to be pre-confirmation, and, hence, subject to Code § 506(b).

Having disposed of Shapiro's argument that case law supports its contention that its "charging" of pre-confirmation fees does not rise to the level of a Code § 362(a) stay violation, the Court next turns to the argument that the Payoff Letter does constitute such a violation.

Initially, it is worth noting the manner in which Shapiro has characterized its Payoff Letter to the Debtor. During cross examination of Shapiro attorney Anne Miller–Hulbert at the March 22, 2006 hearing, Miller–Hulbert was asked whether "... this [payoff] letter communicates that if you don't pay the $584.05 by December 22nd, you will not get a release for your mortgage?" She replied "[n]ot necessarily, no." Ms. Miller–Hulbert went on to testify that "I think it's just telling what's due by that date. It's *informational.*" Transcript, p. 80 (emphasis added). In *In re Draper*, 237 B.R. 502, 505 (Bankr. M.D.Fla.1999), a creditor maintained that an invoice mailed to the debtor was for "informational purposes only." The court held that "[t]his self-serving statement does not obviate the fact that the invoice seeks payment from the debtor." *Id.* The *Draper* court went on to note that the automatic stay can be violated even "... when the creditor did not plainly ask for payment from the debtor ... [if] ... the creditors' actions were designed to place pressure on the debtor to pay the debt." *Id.* at 505–06. That Shapiro's inclusion of "Bankruptcy Attorney Fees" (pre or post-

confirmation) in the Payoff Letter was only "informational" in nature, and not designed to elicit payment of those fees by the Debtor, is an assertion that the Court is not willing to accept. In fact, under direct examination at the March 22, 2006 hearing, John A. DiCaro himself admitted that "[w]e made a request for legal fees." *See* Transcript, p. 100.

The standard for what constitutes a willful violation of the automatic stay is well established.

> A willful violation of the stay does not require specific intent to violate the stay. A party can be subject to liability under 362(h) if it engages in conduct which violates the automatic stay, with knowledge that a bankruptcy petition has been filed. In determining whether a stay violation was willful, it is irrelevant whether the party believed in good faith that it had a right to the property at issue. Not even a good faith mistake of law or a legitimate dispute as to legal rights relieve a willful violator of the consequences of his act.

*In re GGSI Liquidation, Inc.*, 2006 Bankr.Lexis 3169, 18–19 (Bankr.N.D.Ill. 2006) (citations omitted).

"A creditor acts willfully if it (1) has knowledge of the petition, and (2) the act which violates the stay was intentional." *In re Turner*, Case No. 04–66972, slip op. at 9 (Bankr.N.D.N.Y.2006) (citing *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc.*, 902 F.2d 1098, 1105 (2d Cir. 1990)). *See also In re Braught*, 307 B.R. 399, 403 (Bankr.S.D.N.Y.2004) (holding that "[i]n the Second Circuit, if a party charged with violating the stay knows that the stay is in effect ... its intention or lack thereof to violate the stay is irrele-

---

**12.** Note the discussion, *supra*, of Shapiro's failure to address the issue of what portion of the remaining $350 in fees for services were for legal services rendered in the thirteen pre-confirmation weeks following the filing of the proof of claim.

vant."); *In re Layton,* 220 B.R. at 517 (holding that "a good faith mistake of law does not relieve a willful violator of the consequences of the act.") (citations omitted).

As to whether Shapiro's "charging" of pre-confirmation fees rises to the level of a Code § 362(a) stay violation, the Debtor has established, and Shapiro has not denied, that Shapiro had notice of the Debtor's bankruptcy. Moreover, the case law is replete with decisions holding that § 362 is to be broadly construed. *See, e.g., In re Robinson,* 228 B.R. 75 (Bankr.E.D.N.Y. 1998) (holding that § 362 should be liberally construed); *In re Wright,* 328 B.R. 660, 663 (Bankr.E.D.N.Y.2005) (holding that § 362 should be liberally construed "to ensure that debtors receive the protection of the automatic stay."); *In re Indian Motocycle Co., Inc.,* 266 B.R. 243, 263 (Bankr.D.Mass.2001) (holding that "§ 362(a)(6) should be interpreted broadly in order to prevent creditor coercion or harassment against the debtor.").

It is beyond dispute that Shapiro, in response to a query by the Debtor to Washington Mutual, sent the Payoff Letter containing what it knew to be at least $150 in pre-confirmation legal fees directly to the Debtor in an attempt to collect that amount. Moreover, as outlined *supra,* this Court also finds that the entire $500 in "Bankruptcy Attorney Fees" referred to in the Payoff Letter comprises pre-confirma-

tion legal fees which fall under the purview of Code § 506(b). Hence, not only is Shapiro not entitled to collect those fees from the Debtor, but its attempt to do so in its Payoff Letter represents a willful violation of the automatic stay. This Court finds that the inclusion of the "Bankruptcy Attorney Fees" in the Payoff Letter, especially when viewed in light of Shapiro's subsequent refusal to allow Debtor's closing to proceed absent payment of those fees, was a willful violation of the automatic stay.[13] Any good faith mistake of law Shapiro may have made regarding Code §§ 506(b), 362(a), or the purportedly "informational" nature of the Payoff Letter is irrelevant, as is any lack of intention on its part to violate the automatic stay in this case.

 Shapiro's protestations that no one complained about its request for "Bankruptcy Attorney Fees" is unavailing.[14] "It is well settled that a creditor has *an affirmative duty* under § 362 to take the necessary steps to discontinue its collection activities against a debtor." *In re Wright,* 328 B.R. 660, 663 (Bankr.E.D.N.Y.2005) (emphasis added). It is not for the Debtor to notify Shapiro or Washington Mutual when its request for fees constitutes a violation of the automatic stay. "It is not the debtor's responsibility to take action that ensures that she receives the protection of the automatic stay; rather the creditor bears the burden of seeking relief

---

**13.** *But see Sullivan v. First Horizon Home Loan (In re Sullivan),* 2003 Bankr.Lexis 2091 *2 (Bankr.E.D.P.A.2003) (holding that "neither the internal posting of fees to an account, nor their inclusion on a payoff statement implicate the automatic stay because neither is an act or effort to collect the fees.") The Court believes that the holding in *In re Draper,* 237 B.R. at 505–06 (holding that even where the creditor did not plainly ask for payment, any actions designed to place pressure on the Debtor to pay represents a stay violation) to be the better view. This is espe-

cially true in cases such as the matter *sub judice,* where the creditor's subsequent actions highlight and reinforce the attempt to collect manifest in the initial attempt to collect the fees.

**14.** "I feel further constrained [*sic* ] to point out that *no one attempted to contact your deponent to indicate that they believed that the fee should not have been charged* or that the fee was excessive." DiCaro Affirmation, ¶ 12 (emphasis added).

from the automatic stay before taking post petition collection actions." *In re Braught*, 307 B.R. 399, 401 (Bankr.S.D.N.Y.2004).

### *Shapiro's Alleged Delay of Debtor's Closing*

█ The Debtor also contends that Shapiro stated that it would not release Debtor's abstract of title until the "Bankruptcy Attorney Fees" were paid. DiCaro vehemently denies this, testifying that ".... no one in my office—I am absolutely confident that no one in my office would ever tell someone, if you don't pay us you don't get your abstract or your title papers. That's just—it's not something I could believe would happen." *See* Transcript, p. 101. It may well be that this is the case. Testimony at the hearing was conflicting on this point. However, there is considerable evidence that Shapiro considered the $500 in "Bankruptcy Attorney Fees" on the Payoff Letter to be more than merely "informational" in nature.[15] Most telling, however, is that Shapiro did not allow the closing to take place even after the Debtor had paid all his outstanding mortgage charges with the exception of the "Bankruptcy Attorney Fees." By DiCaro's own admission, Shapiro and Washington Mutual did not "allow" the closing to occur until those funds had been placed in escrow by the Debtor's attorney. "As I hope the Court is aware, your deponent agreed with the defendant's attorney to *allow* the closing to take place upon condition of holding some funds [sic] in escrow pending the Court's decision. This *allowed* the closing to take place, thus the debtor has not been harmed." DiCaro Supplemental Affirmation, ¶ 11 (emphasis added). This makes it abundantly clear to the Court that Shapiro and Washington Mutual viewed, and treated, the Debtor's payment of the pre-confirmation "Bankruptcy Attorney Fees" as condition precedent to the closing of the Debtor's real property sale.

The refusal to allow the closing of a Chapter 13 debtor's real property sale to proceed for lack of payment of undisclosed and unapproved pre-confirmation attorney fees is not only a clear violation of the automatic stay, it also severely undermines Shapiro's contention that the Payoff Letter was only "informational." Shapiro's subsequent actions in not allowing the closing to proceed until the "Bankruptcy Attorney Fees" were escrowed make it clear that its Payoff Letter was a bona fide attempt to collect the "Bankruptcy Attorney Fees," and a blatant violation of the automatic stay.

### *Damages*

It has been established that Shapiro violated the automatic stay in this case by billing the Debtor for pre-confirmation attorney fees, and by not allowing the closing to proceed until those fees were paid, or at least escrowed. The Court now examines whether Debtor is entitled to actual damages[16] for this stay violation.

█ "Once a court finds a stay violation to be willful, § 362(h) requires an award of damages, if there are any." *In re Adomah*, 340 B.R. 453, 460 (Bankr.S.D.N.Y. 2006). As noted *supra*, this Court has already determined that there was a willful violation of the automatic stay.

█ "The party seeking damages for [a] violation of the automatic stay must prove the following elements:(1) that a bankrupt-

---

15. Under direct examination at the March 22, 2006 hearing, DiCaro admitted that "[w]e made a request for legal fees." *See* Transcript, p. 100.

16. "The term 'actual damages' is synonymous with the term 'compensatory damages.'" *In re Wright*, 328 B.R. 660, 664 (Bankr.E.D.N.Y. 2005) (quoting *In re Cox*, 214 B.R. 635, 642 (Bankr.N.D.Ala.1997)).

cy petition was filed, (2) that the debtor is an individual (3) that the creditor received notice of the petition, (4) that the creditor's actions were in willful violation of the stay, and (5) that the debtor suffered damages." *In re Wright*, 328 B.R. 660, 663 (Bankr. E.D.N.Y.2005). The first three of these *Wright* factors, that a petition was filed, the Debtor is an individual and the creditor had notice of the petition, are not in dispute. As to the fourth factor, this Court has found that the creditor's actions were in willful violation of the stay. Only the fifth *Wright* factor, whether the debtor suffered damages, remains to be determined. *See also In re Coney Island Land Co., LLC*, 2005 Bankr.Lexis 2909 at 7 (Bankr.E.D.N.Y.2005) (holding that "[t]he debtor must sustain actual damages from the violation in order for a court to award damages, which may include costs and attorney's fees.")

This Court has recognized the existence of, and awarded, actual damages for emotional distress in the past. *See, e.g., In re Ficarra*, Case No. 00–62714, slip op. at 14 (Bankr.N.D.N.Y. April 17, 2000); *In re Williams*, Case No. 003–64481, slip op. at 3 (Bankr.N.D.N.Y. April 19, 2004).

 In the instant case, both the Debtor and his counsel's paralegal, Patricia Mourick, testified at length during the March 22, 2006 evidentiary hearing regarding the number of times the Debtor phoned Mourick to check on the progress of the stalled closing. Mourick stated that "I had so many conversations between [Shapiro] and Mr. Sullivan that I couldn't get any other work done." Transcript, p. 18. She also stated that "Mr. Sullivan called me about every hour, if not more." *Id.*, p. 22. The Debtor testified that he was receiving queries on reasons for the delay in the closing from his ex-wife in Utah, as well as his real estate agent, and that he was anxious to sell the house so

that he could join his son in Charlotte, North Carolina. *Id.*, pgs. 47, 48, 52. Debtor also testified that "I was a nervous wreck half the time, just prior to the closing, because ... I even called around trying to trace back when the first mortgage was with Syracuse Savings Bank, and— and then I called the bank and they wouldn't—every time I called the bank, they ... just gave me the runaround. They didn't give me any information." *Id.*, p. 50. Perhaps the Debtor's level of frustration at this delay could be discounted, or even dismissed, had he defaulted on his mortgage payments, or made late payments. Neither of these were the case, however. The Debtor had faithfully and promptly made his mortgage payments for over twenty-eight years, and continued to make those payments promptly and directly to the mortgagee throughout his Chapter 13 case.

The Court believes that the level of aggravation and frustration caused by the delay in the Debtor's closing while Shapiro and Washington Mutual attempted to collect pre-confirmation attorney fees rises above the level of the run-of-the-mill anxiety that accompanies the typical real estate closing, and merits an award of actual damages of $1,000.00.

It is true that "[c]ourts seek to guard against an excessively litigious approach to violations of the automatic stay that do not cause damages in and of themselves." *In re Coney Island Land Co., LLC*, 2005 Bankr.Lexis 2909 at 7 (Bankr.E.D.N.Y. 2005). The Court does not believe, however, that awarding damages to a debtor where the creditor and its agent have committed such a clear violation of the automatic stay will encourage excessive litigation. The Court expects, instead, that it should discourage creditors from disregarding the automatic stay when attempt-

ing to maximize their fee recovery from Chapter 13 debtors.

■ The Debtor has also requested punitive damages, as allowed for in Code § 362. The Second Circuit Court of appeals has held that

> any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h).

*In re Crysen/Montenay Energy Co.,* 902 F.2d at 1105.

The Court does not see evidence of Shapiro's or Washington Mutual's maliciousness or bad faith sufficient to merit an award of punitive damages in the instant case.

However, two aspects of Shapiro's and Washington Mutual's behavior trouble the Court. The first is Shapiro's arbitrary allocation of fees in order to allow its client to maximize its collection of legal fees from its mortgagor. Its ostensibly "free" provision of legal services in the thirteen weeks following the filing of the proof of claim and preceding confirmation of the Debtor's plan is clearly a fiction concocted to get the remaining $350 of the "Bankruptcy Attorney Fees" into post-confirmation territory where it could safely be charged to the Debtor. Even more troubling, however, is the extent to which it appears Shapiro (or its client Washington Mutual) took advantage of the perception of disclosure inherent in the bankruptcy process to "sandbag" the Debtor. It is clear that the *Telfair* and *Slick* cases cited by Shapiro hold that collection of post-confirmation attorney fees does not violate Code §§ 506(b) or 362. In fact, this Court agrees with the *Telfair* court's reasoning when it declines to maintain its control

over post-confirmation awards of attorney's fees because "... the terms of debt instruments agreed to by debtors and creditors provide adequate protection for Chapter 13 debtors." *In re Telfair,* 216 F.3d at 1339. However, if and when a mortgagee (or its law firm) deliberately fails to disclose its pre-confirmation legal fees so that its debtor will not be aware of the purportedly "post-confirmation" legal fees to follow until well after fulfillment of the Plan when the Debtor seeks to pay off the mortgage and/or transfer the property, this Court believes that creditor seeks to take unfair advantage of Chapter 13 debtors.

Implementation of a creditor's fee maximization and collection policy is between it and its debtor. However, when a creditor (or its law firm) seeks to use Chapter 13 debtors' expectations of full disclosure as camouflage for implementation of that policy, it begins to approach that level of bad faith and maliciousness required for a finding of punitive damages.

### Attorneys Fees

■ Attorneys' fees can be viewed as a component of actual damages in an action for damages for a violation of the automatic stay. "Attorneys' fees are included in the award of actual damages awarded pursuant to § 362(h)." *In re Wright,* 328 B.R. at 664. Even more relevant to the facts of the instant case, "[a] court may award attorneys' fees pursuant to section 362(h) *even if the debtor has suffered no other compensable harm.*" *In re Robinson,* 228 B.R. at 85 (emphasis added). The Payoff Letter in itself would perhaps not merit an award of attorneys' fees. However, that stay violation, when combined with Shapiro's subsequent refusal to "allow" the Debtor's closing to proceed without Debtor's payment of the pre-confirmation "Bankruptcy Attorney Fees"

lead this Court to believe that the Debtor was justified in consulting with his counsel on this point, and in pursuing Shapiro and Washington Mutual for their violation of the automatic stay in the Debtor's case. As such, the Debtor is entitled to its reasonable legal fees incurred in prosecuting this action.

> Where there is a willful violation [of the stay], the violator must compensate a debtor's counsel for his reasonable response to that violation. To deny fees incurred litigating the motion would inappropriately saddle a debtor or debtor's attorney with such expenses; violators would be able to deny compensation to a debtor's counsel knowing that his costs to litigate the motion would greatly exceed his reimbursement.

*In re Robinson,* 228 B.R. at 86–87.

Debtor's request for contingent legal fees, however, is denied.

### CONCLUSION

 Shapiro's Payoff Letter violated the automatic stay because it sought payment of pre-confirmation attorney fees. For reasons set out above, the amount of those pre-confirmation fees was not $150 as Shapiro maintains, but the entire $500 billed by Shapiro at the time of the plan's confirmation. This stay violation was exacerbated and highlighted by Shapiro's subsequent refusal to allow Debtor's sale of the mortgaged property to proceed until the "Bankruptcy Attorney Fees" were paid. And because the acts of an agent can be imputed to its principal, Washington Mutual is equally liable for this stay violation. "[A]bsent a truly extraordinary situation ... the client is not excused from the consequences of his attorney's nonfeasance." *Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 666 (2d Cir.1980).

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts,' notice of which can be charged upon the attorney.

*Id.* at 667 (citing *Smith v. Ayer,* 101 U.S. 320, 326, 25 L.Ed. 955 (1880)).

As set out above, the Court finds the automatic stay violation significant enough to warrant an award of actual damages of $1,000, as well as Debtor's reasonable attorney fees incurred to commence and prosecute this contested matter.

Based on the foregoing, it is hereby

ORDERED that Debtor's Motion for Violation of the Automatic Stay Provisions of 11 U.S.C. § 362 *et seq.* seeking actual damages is hereby granted in the amount of $1,000.00; and it is further

ORDERED that Debtor's Motion for Violation of the Automatic Stay Provisions of 11 U.S.C. § 362 *et seq.* seeking reasonable attorney fees is hereby granted; and it is further

ORDERED that Debtor's counsel shall file and also serve on Shapiro and the Chapter 13 Trustee an Affidavit of Services performed in connection with this contested matter together with supporting time records, within forty-five days of the date of this order; and it is further

ORDERED that Debtor's Motion for Violation of the Automatic Stay Provisions of 11 U.S.C. § 362 *et seq.* seeking punitive damages and contingent attorney fees is hereby denied.